## FULLER v. FIELD et al.

(Circuit Court of Appeals, Seventh Circuit. October 30, 1897.)

### No. 432.

**1. PRACTICE—PRODUCTION OF BOOKS—PATENT INFRINGEMENT SUIT.**

The complainant in a patent infringement suit cannot, for the purpose of discovering alleged sales of infringing articles, compel the defendant to produce before the master all the numerous books pertaining to a large business, but must be satisfied with an order requiring the production of books which would show any transactions with respect to the sale of any article of the character of that covered by the patent. If the production of any particular books is desired, they must be specified.

**2. DESIGN PATENTS—INFRINGEMENT—PENALTIES.**

The penalty prescribed by Act Feb. 4, 1887, for unlicensed sales of articles bearing a patented design, attaches only in the case of willful infringement, and not to sales made in ignorance of the patentee's rights.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

Abigail Rebecca Fuller, appellant's intestate, filed her bill in the court below to enjoin the alleged infringement of letters patent of the United States of America, No. 16,887, dated September 7, 1886, granting to her the exclusive right, for 3½ years from the date of the patent, to make, use, and vend a design for a rosette intended to enrich the appearance of wearing apparel trimmed with the same. Such proceedings were had that, on the 23d day of November, 1891, a decree was entered in favor of the complainant below, adjudging her right under such letters patent to the design therein referred to, that the defendants below (the appellees here) had infringed upon such patent and the exclusive right of the complainant therein and thereunder, that the complainant do recover of the defendants all gains and profits by them made, and the damages sustained by the complainant by reason of such infringement, and referring the cause to one of the masters of the court to take proof and to ascertain and report the amount of such gains and profits, and of the damages sustained by the complainant by reason of such infringement. The decree further provided "that such complainant in such accounting have the right to cause an examination of said defendants' officers, agents, employés, and workmen, and also the production of the books, vouchers, documents, or other papers of the defendants, and that the said defendants, by their proper officers, servants, or attorneys, attend for such purpose before said master from time to time, as such master shall direct." Following this decree there were, from time to time, many desultory proceedings before the master. The defendants, or such of them as the complainant desired, and their employés, or such of them as complainant desired, were from time to time produced and examined

as witnesses. The defendants also produced an account from their books showing what they claimed to be the entire extent of their infringement of the complainant's patent. This consisted of four dozen collarettes which had upon them the complainant's design, purchased in October and November, 1888, and which from the bill appear to have been purchased by them at the price of $24 for the whole, and were sold by them at retail for the sum of $36. On the 31st day of October, 1893, the court directed that the complainant have 15 days in which to close proofs, and that the master file his report within 20 days from that date. Afterwards, on the 12th of December, 1893, complainant moved for additional time in which to take evidence, which motion the court overruled. The hearing thereafter was continued before the master, who, on the 20th of December, reported: (1) That the defendants, during the lifetime of the patent, had purchased and sold four dozen collarettes which infringed upon complainant's design patent, paying therefor the sum of $36; (2) that it did not appear what profit the defendants had made by the transaction; (3) that the defendants were liable, under Act Cong. Feb. 4, 1887, c. 105 (24 Stat. 387), in the sum of $250. To this report the defendants filed exceptions, among other things excepting to the report wherein the master finds them liable under the act of congress; and the complainant filed exceptions, which are sufficiently stated in the opinion of the court. On the 5th day of March, 1894, the court sustained the exception of the defendants with respect to their liability to the penalty imposed by the statute, overruled all other exceptions, confirmed the master's report, and ordered that a decree be entered in favor of complainant for $36 and costs of the suit. On the 19th day of October, 1896, a motion for rehearing, which is stated to have been filed June 4, 1894, was heard and overruled by the court, and on the 20th of October, 1896, a decree was formally entered in favor of the complainant against the defendants for the sum of $36 and costs of suit, with the direction that the decree should be entered nunc pro tunc as of the 5th day of March, 1894, the date of the argument of the cause. On the 8th of April, 1897, the death of the complainant was suggested, and Ezerean Fuller, as administratrix, was substituted. Exceptions were filed to the decree to the effect that the circuit court erred (1) in overruling the exceptions to the master's report; (2) in confirming the report; (3) in directing a decree for $36 and costs, when in fact a decree should have been entered for a much larger amount.

Ezerean Fuller, per se.

Frank P. Leffingwell, for appellees.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge, after stating the facts, delivered the opinion of the court.

It is not well that one trained to the profession of the law should act as counsel for himself. Natural bias of mind in one interested in the event tends to obscure the mental vision, making light of obstacles that are weighty, and unduly exaggerating matters which are of slight or no importance. The evil is greatly increased when one unused to the ways and practices of the profession, and unversed in the practice of law, assumes to act as his own counsel, and especially is this so when that one is a lady not only unfamiliar with the practice of law, but unaccustomed to the ordinary usages of business life. In this case the excusable ignorance of business methods, and total unfamiliarity with the practice of the law and with proceedings in judicial tribunals, has not only contributed to swell unduly the voluminous record here with matters which, sitting as a court of review, we cannot consider, but may also have possibly resulted in the failure to produce evidence which might have aided the contention of

the appellant. Waiving every question of irregularity in the record, we have carefully examined the proceedings before the master to ascertain if, from anything that there took place, the appellant has suffered legal injury, and we have not been able to discover that she has just ground of complaint. The issue was sharply defined. The defendants insist that the total of their infringement was the purchase and sale of four dozen collarettes; that such infringement occurred from the purchase of the goods from the mother of one of their clerks, a widow whose husband had been in their service; that the purchase was made through generous motives, to aid her, and without knowledge on their part of the patent to the complainant, and without intent to infringe upon her rights; and that, when advised of infringement, they sought to make ample reparation for the unintentional wrong done. It would seem that the complainant was possessed of the belief that the infringement by the defendants assumed greater proportions. It was incumbent upon the complainant to establish this if it were so, and the attempt of the complainant to prove this without definite knowledge of the fact, and without understanding how to go about it, naturally resulted in failure. The master required the defendants to produce their books which would show the transactions with respect to the sale of any article of the character covered by the patent of the complainant, and all such books, as they insisted, were produced. The bookkeepers of the defendants testified to their examination of the books in respect to the purchase of articles in the departments of the defendants' business where such articles would naturally be purchased and exposed for sale, and they testify that no other purchase or sale than that stated had been made. The complainant, however, required that the defendants should examine other of their books, and insisted that the master should compel that to be done. This was manifestly a request which could not be entertained, and a proceeding which the master would not be authorized, under the decree, to order. It does not appear that the defendants objected to an examination of their books by the complainant or her agent. If the complainant had desired any particular books, she should have specified them, and when brought before the master they were subject to her examination; but to compel the production of cart loads of books covering the large transactions of the defendants, and which they insisted had no reference to the matter in hand, or to require the defendants to make such examination, would have been an abuse of the process of the court. We are unable to perceive that any wrong was done to the complainant in the proceedings before the master.

The defendants below purchased the infringing articles, as would appear from the bills of purchase, at the price of $24, and sold them at the price of $36. The court below, as also the master, awarded as damages and profits the total amount which the defendants received. Of this the appellees are not here complaining, and certainly the appellant, upon this branch of the case, cannot reasonably find fault with that conclusion. The master also allowed the sum of $250, the penalty stated in the act of February 4, 1887 (24 Stat. 387). The court sustained the exception by the defendants to this finding of the master,

and the correctness of that ruling is before us.    The statute in question declares it to be unlawful for any one, without the license of the owner, to apply a design secured by letters patent, or any colorable imitation of it, to any article of manufacture for the purpose of sale, or to sell or expose for sale any article of manufacture to which the design or colorable imitation of it shall, without the license of the owner, have been applied, knowing that the same has been so applied; and provides a penalty of $250 for so doing, and that such sum may be re-covered by the owner of the letters patent to his own use, either by action at law or upon a bill in equity for an injunction to restrain such infringement.    We concur with the court below that this penalty only attaches where the infringer knows that the article exposed for sale has upon it a design protected by letters patent.    It was not the object of the statute to impose that penalty upon an innocent infringer. It is in the nature of a punishment for the willful violation of another's protected right.    So far as this record discloses, the infringement here was inadvertent, without knowledge of the complainant's right. It occurred through a laudable effort to aid a supposed deserving widow of a former employé, and the extent of the infringement was inconsiderable.    We cannot, upon the language of this act, suppose that it was the intention of congress to impose such a penalty for an inadvertent and ignorant invasion of another's right.

At the argument the appellant, conducting the case in person, made statements to the court with respect to alleged infringement by the appellees of which she had been informed, the evidence of which does not appear in the record.    It must be apparent, even to one wholly unused to judicial proceedings, that, sitting as a court of review, we are not at liberty to take cognizance of matters dehors the record, or to entertain new evidence pertaining to the issue, which, if properly presented to the court below, could have been there considered.    The decree will be affirmed.