ROLLMAN MFG. CO. v. UNIVERSAL HARDWARE WORKS.

(District Court, E. D. Pennsylvania.   December 14, 1914.)

No. 633.

PATENTS (§ 292*)—SUITS FOR INFRINGEMENT—ACCOUNTING—EXAMINATION OF BOOKS AND PAPERS.

In a suit for infringement of a patent for a cherry seeder, where defendant was required to produce certain books of account before the master, it could not, on producing ex parte affidavits that the seeders sold during a certain period did not include the infringing features, seal certain parts of the books and refuse to permit an examination until plaintiff proved the sale of infringing seeders during that period, as this would preclude plaintiff of an opportunity to trace seeders sold during such period, and determine whether they were infringements, and the master properly ordered an examination, with permission to defendant to cover up the names of the consignees and the prices until it was shown that items related to cherry seeders.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 446; Dec. Dig. § 292.*]

In Equity.   Suit by the Rollman Manufacturing Company against the Universal Hardware Works.   On petition by plaintiff for an order on defendant to produce books and papers.   Defendant ordered to comply with the order of the master.

See, also, 207 Fed. 97.

John A. Coyle, of Lancaster, Pa., for plaintiff.
John A. Hipple, of Lancaster, Pa., for defendant.

THOMPSON, District Judge.   The defendant has produced before the master, in accordance with his order, certain books of account, but has sealed and refused to permit examination of such parts as pertain to its business since March 1, 1911, and has also refused to produce its invoices from March 1, 1911, for examination.   It is conceded that the sealed records of the defendant's business pertain, in part, at least, to its manufacture and sale of cherry seeders.

The defendant in the plaintiff's case has attempted to offer in evidence before the master certain affidavits which purport to show that since March 1, 1911, no cherry seeders have been manufactured or sold by it containing or embodying the inventions or improvements claimed in the claims of the patent held to be valid, and held to be infringed by the defendant's cherry seeder.   It is contended by the defendant that the burden is upon the plaintiff to show that cherry seeders made and sold since March 1, 1911, infringed, before it can be compelled to produce its books of account containing entries relating to manufacture and sale since that date.   In order to sustain the defendant's contention, the master must accept as prima facie conclusive of the identity of the machines referred to in the books the statements of defendant's counsel and the ex parte affidavits produced by him, or the testimony of the affiants upon examination without examination of the books.   It would then be incumbent upon the plaintiff to prove the

contrary, as it is obvious that it would not consent to be bound by the testimony of the witnesses called by the defendant.

It may be that the plaintiff desires, as is its right, to trace the cherry seeders which the defendant has sold since March 1, 1911, to the vendees or consignees, in order to determine whether they are, as stated in defendant's affidavits, different in construction from the cherry seeders held to infringe, or similar thereto. To close the defendant's books to the plaintiff would preclude it from obtaining evidence to contradict the affidavits or testimony of the witnesses produced by the defendant, and its inquiry as to the construction of such cherry seeders would be effectually blocked. The books are the best evidence of their contents, and the plaintiff is entitled to their production for examination, without which the master could not determine the truth of the facts as to manufacture and sale asserted by the defendant. It is entirely in order for the plaintiff to show first by the defendant's books the sales or consignments of cherry seeders by the defendant to various vendees and consignees, and, if necessary, to follow this by proof that the cherry seeders so sold and consigned contain and embody the inventions or improvements of the plaintiff's patent. To sustain the defendant's contention might preclude the plaintiff from obtaining any evidence of the construction of the cherry seeders sold and consigned, except upon the testimony of witnesses called by the defendant.

The master very properly made his order for examination of the books subject to permission to the defendant to cover up the names of the consignees and the prices in the examination of the various items until it is shown that those items relate to cherry seeders, and subject to the condition that the examination must be made always in the presence of the defendant. It is apparent that the order of the master is proper and should be obeyed. This conclusion is not in conflict with the cases cited by the defendant. There is no attempt here to bring before the master books of account which do not tend to show transactions with respect to the sale of articles not covered by the patent, as in Fuller v. Field, 82 Fed. 813, 27 C. C. A. 165, and Caspary v. Carter (C. C.) 84 Fed. 416, as it is conceded that the accounts which are withheld by the defendant show sales of cherry seeders. It may develop that these cherry seeders do not infringe, but to preclude examination in respect to them would prevent the plaintiff from tracing them for identification.

In Murray v. Orr & Lockett Hardware Co., 153 Fed. 369, 82 C. C. A. 445, it was held—

"better and cleaner-cut practice to require a complainant to set up alleged new infringements in a supplemental bill. Thereupon, if it should be found that the additional types contain only colorable departures from the adjudged infringing type, the decree for an injunction and an accounting and the order of reference could be extended to cover them specifically; or, if the changes should appear to be so radical that the pending suit ought not to be cumbered and delayed by practically a new issue, the supplemental bill could be dismissed, with leave to the complainant to begin an independent suit. We deem this the better practice, because, if an accounting before the master is extended to devices that have not been adjudged by the court to be infringements, a very great and unnecessary consumption of time and burden of costs may be imposed upon the parties."

The present case has not proceeded to a point where it can be held that the accounting is extended to devices not .adjudged by the court to be infringements, because until the books are examined it cannot be determined what cherry seeders are included therein.

The case of Hoe v. Scott (C. C.) 87 Fed. 220, is cited by the defendant as determining that the master must, before permitting examination of the books, determine whether the article manufactured and sold is an infringement. In that case the court used the following language:

"Whether the particular machines of the defendant in this case embody any of the claims of the complainants' patent adjudged to be infringed by defendant is properly a question to be determined in the first instance by the master."

Defendant's counsel construes the language "to be determined in the first instance by the master" as meaning that there must be a determination by him of the question of infringement prior to receiving evidence from the books of manufacture and sale. In the connection in which the language is used, it clearly means that such question must be determined by the master, and not by the court, in the first instance. Judge Kirkpatrick held, as stated in the syllabus:

"When a cause is referred to a master to take an account of profits or damages, it is his duty to pass upon all the questions of procedure arising before him. His action is subject to review only when he has completed his labors, and filed his report; and the court will not, in the meantime, on the application of a party, give him directions not to take evidence in relation to a particular matter."

It is ordered that the defendant comply with the order of the master.