WESTINGHOUSE et al. v. NEW YORK AIR BRAKE CO.

(Circuit Court of Appeals, Second Circuit, June 10, 1905. On Rehearing, October 11, 1905.)

No. 219.

1. PATENTS—MEASURE FOR INFRINGEMENT—PROFITS.

In determining the profits and damages recoverable for infringement of a patent for a device which constitutes only one feature of the machine or structure sold by defendant, it is the settled rule that the burden of proof rests on the complainant to separate or apportion defendant's profits between the patented and unpatented features, and by evidence which is reliable and tangible, or he must show by equally satisfactory evidence that profits and damages should be calculated on the whole machine, for the reason that its entire value as a marketable article is properly and legally attributable to the patented feature.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 545, 566–576.]

2. SAME.

The question whether a machine would or would not have been marketable without a patented part is one of fact, which depends largely on opinion evidence; and the most satisfactory evidence is that which is afforded by the nature and intrinsic value of the improvement which such part introduced into the art or industry in which the machine is employed. When the patented improvement is one of subordinate importance, or the value of the machine as a whole depends more upon the unpatented parts, a finding that the marketable value of the whole has been created by the patented part can seldom be correct.

140 F.—35

3. SAME—AIR-BRAKE MECHANISM.

On an accounting for profits and damages for infringement of the West-inghouse patent, No. 376,837, for an improved quick-action triple valve for air brakes, it was shown that defendant made and sold complete air-brake equipments for railroad trains, which included the patented device. The other parts of such equipment, including the triple valve, were either open to the public or covered by other patents, and had been in successful use without the patented feature, which was for emergency use only. It was shown that during the time of the infringement there was comparatively little demand for such equipments that were not pro-vided with quick-action triple valves; but there were other forms of such valves not covered by the patent in suit, which operated success-fully. Held, that such evidence was not sufficient to establish the claim that the marketable value of the equipment as a whole, or of the triple valve, was due solely to the patented device, and that, in the absence of evidence to separate or apportion the profits made by defendant be-tween the patented and unpatented features of the quick-action triple valves, complainant was not entitled to recover substantial profits or damages.

[Ed. Note.—Accounting by infringer of patents for profits, see note to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8.]

Appeal from the Circuit Court of the United States for the South-ern District of New York.

See 115 Fed. 645; 131 Fed. 607.

Frederic H. Betts, for complainants.

Charles Neave and William A. Jenner, for defendant.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. Both parties have appealed from the decree in this cause, and their appeals present the single question of the amount of the recovery to which the complainants are en-titled in consequence of the infringement by the defendant of the complainants' patent No. 376,837 for an improvement in automatic air-brake mechanism, known as the "quick-action" triple valve. The patent contains six claims, and the interlocutory decree adjudged that three of these claims were valid and had been infringed by the defendant, and ordered a perpetual injunction, together with an ac-counting of profits and damages. Upon the accounting before the master he found that during the period of infringement—from No-vember, 1890, to December, 1893—the defendant had sold 18,107 infringing "quick-action triple valves in connection with car equip-ments." He also found, in substance, that the invention covered by the infringed claims was one of dominating importance in the trade in air-brake equipments for railroad trains, and practically controlled the market for such equipments during the period of infringement, superseding all older kinds of equipments, and rendering it impossi-ble for the defendant to have made any sales, or any profit from the sales of such equipments, if it had not made and sold the patented ap-paratus. He found that the profits derived by the defendant from the sale of train equipments in connection with the patented quick-action valve were the sum of $49,533. He also found that the sales of the defendant diverted an equal number of sales of train equip-

ments from the complainants, upon which the complainants would have realized a profit of $193,978, and that the complainants were entitled to that amount as damages caused by the infringement. Exceptions to the master's report were filed by the defendant and were heard before Judge Wheeler. He sustained the exceptions, and recommitted the report to the master "for the purpose of making a computation of profits and damages based upon the sales by the defendant of the quick-action valves of the patent only, separated from those upon the complete equipments." The master interpreted Judge Wheeler's decision as meaning only that the accounting was to be confined to the complainants' profits and damages based upon the sales of the "triple-valve structure, disassociated from the accessories necessary to constitute a train equipment." Upon this theory the master in his supplementary report found that the profits made by the defendant upon these sales were $36,945, and that the damages sustained by the complainants by loss of profits on diverted sales were $128,737. Exceptions were filed to the supplementary report, but these were not heard by Judge Wheeler, and, being overruled by the court below, the complainants were by the final decree in the cause awarded the recovery thus reported.

We fully agree with the conclusions of Judge Wheeler, and his concise opinion, rendered in deciding the exceptions to the master's original report, so clearly expresses the reasons why the complainants should be confined to a recovery of profits made by the defendant and profits diverted from the complainants upon the quick-action triple valve only that we should not attempt to add to his opinion, were it not that it seems desirable to repeat some of the rules measuring the recovery in patent causes for infringement, which, though perfectly well settled, seem to be frequently ignored upon accountings in such causes. The voluminous record upon the accounting in this cause, with its mass of opinion evidence and other testimony having no bearing upon the real issue, illustrates the needless expense and waste of time often incurred from disregarding the plain and simple rule that:

"Where the infringement is confined to a part of the thing sold, the recovery must be limited accordingly." Philp v. Nock, 17 Wall. 460, 462, 21 L. Ed. 679.

The complete automatic air-brake equipment, which was manufactured and sold by the competing parties, comprises 17 distinct parts and includes, among others, the triple valve, the quick-action auxiliary of the triple valve, the brake cylinder, the auxiliary reservoir, pressure-retaining valves, hose couplings, etc. The quick-action triple valve of the patent is a triple valve with an auxiliary device, which may be either structurally incorporated into it or attached to it. The triple valve is an independent device, and operates to perform its assigned functions in the air-brake system, whether the quick-action attachment is present or not, and whether the attachment, when it is present, operates or does not. The plain triple valve was used satisfactorily for many years before the quick-action attachment was devised, and is still used satisfactorily without such attachment. Every modern air-brake equipment contains the plain triple valve whether

or not it contains in addition some form of quick-action attachment. It provides for a partial or graduated application and removal of the brakes to stop the train or release it in the ordinary movements of slowing, stopping, and starting, and for an emergency application when it seems necessary to stop the train suddenly. An air-brake system which does not provide for the graduated application would be so seriously disadvantageous that it would not be used. The quick-action attachment is for emergency applications. It is seldom brought into action. A very capable engineer while with the New York Central Railroad Company used it only three or four times during two years, and during two years when he was driving trains on the New England Railroad used it only once. It is not needed upon short trains, like ordinary passenger trains, but upon long freight trains it is an important auxiliary to the triple valve, as without it the time consumed by the progressive operation of the brakes upon the first car and the last car, and the consequent slack motion, subjects the cars at the further end to violent shock and liability of breakage. Mr. Westinghouse testified for the complainants as follows:

"Car equipments fitted for passenger train service could probably have been sold without the quick-action triple valve, as such brakes were in successful use at the time of the invention of the quick-action valve. Few freight-car brakes, however, could have been sold after the exhibition of the train fitted with the quick-action brakes made in accordance with the patent in suit. Since then the Westinghouse Brake Company have sold but very few automatic brakes for use upon passenger or freight trains, and they have not sold or offered for sale automatic brakes for use upon freight or passenger cars since defendants were enjoined in this suit. * * * If, however, it should be contended that the automatic valve in the quick-action brake possesses some commercial value, I can think of no better measure of this value than the relative number of sets of brakes of each kind that have been sold [by the Westinghouse Air Brake Company] since January 1, 1888, up to November, 1893, the date of the injunction in the present suit." He testified to sales of 18,450 of ordinary triple valves and 239,500 of the quick-action triple valves.

The quick-action triple valve of the patent in suit was not the only quick-action valve which was in commercial use during the period of infringement. The quick-action valve devised by Geo. A. Boyden, and the quick-action valve of the prior patent to Westinghouse, No. 360,070, were also in use, about 10,000 having been sold. The Boyden Brake Company and the Lansberg Brake Company were competitors of the complainants and the defendant. The quick-action valve of the patent is an improvement upon the quick-action triple valve of patent No. 360,070, and embodies the invention of that patent. In the present suit the complainants sought for an injunction and an accounting because of the infringement of that patent by the defendant; but, as to that patent, it was decided that the defendant had not infringed, and the bill, so far as it was founded upon that patent, was dismissed.

The decree appealed from, in sanctioning the findings of the master, allows the complainants a recovery, not only for the profits realized by the defendant in making and selling quick-action triple valves upon which the device of the patent in suit is only an improvement, but also those realized from making and selling the ordinary triple valve, without which the quick-action attachment would be compar-

atively valueless, and which the defendant and the public generally were free to make and sell; and it allows the complainants damages for lost profits which the complainants could have made upon similar sales if the defendant had not been a competitor. And the complainants, not content with this, now insist by their appeal that the defendant is accountable for the profits realized by the defendant and those lost by the complainants on the entire equipment employed in the automatic air-brake system and sold together with the patented attachment by the defendant, upon the theory that the defendant could not have sold any automatic air-brake equipments except with the patented attachment.

The proofs show that there was comparatively little demand by railroad companies for complete automatic air-brake equipments that were not provided with quick-action triple valves during the period of the infringement. But it-is clear that the quick-action attachment was one of secondary importance in automatic brake equipments. It is apparent that the complainants could not have sold any of the patented valves if there had not been embodied in them the devices of the quick-action triple valve of the earlier Westinghouse patent, or equivalent devices such as the defendant and the Boyden Brake Company employed in their quick-action valves, and which did not infringe the earlier patent.

The general rule governing recoveries in infringement cases is stated, quoting Judge Blatchford (15 Blatch. 70, Fed. Cas. No. 5,248), in Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, in the following language:

"The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented features and the unpatented features, and such evidence must be reliable and tangible, and not conjectural and speculative; or he must show by equally reliable and satisfactory evidence that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine as a marketable article is properly and legally attributable to the patented feature."

Referring to the first branch of this rule, this court said in Wales v. Waterbury Manufacturing Co., 101 Fed. 126, 41 C. C. A. 250:

"This has always been the rule, and it is manifestly a just one upon principle; but it is often difficult of practical application, and the courts have sometimes applied it so that it has not produced an equitable result. In many cases, where it is obvious that the patented invention has contributed a great part of the profits realized from selling the infringing article or apparatus embodying unpatented features, it is practically impossible for the complainant to establish affirmatively the proportionate part."

Referring to the theory that an infringer is a trustee ex maleficio, and the rule that a trustee who has confused the profits made by the use of a trust property with those made from his own property, and commingled them so that they cannot be segregated, must account for the whole, this court in that case also said:

"Such a rule would work unjustly in many cases, as where the patented feature is of an insignificant part of a machine or article; and it is probably because of its manifest inequity in such cases that the courts have placed upon the complainant the burden of proof."

The adjudications in which the latter branch of the rule in Garretson v. Clark has been applied are cited in Wales v. Waterbury Manufacturing Co., and any further reference to them is unnecessary. In all of them, in which the question was as to the basis of profits upon sales, the rule applied was that the profits upon the whole machine or article were allowable only when, but for the patented feature, the machine or article sold by the infringer would not have commanded a market.

The question whether a machine would or would not have been marketable without the patented part is of course a question of fact, but it is one which depends largely upon opinion evidence. The most satisfactory evidence upon the question is that which is afforded by the nature and intrinsic value of the improvement which it introduces into the art or industry in which the machine is employed. In Wales v. Waterbury Manufacturing Co. the unpatented part "was useless, and derived its whole value from the patented part." In Manufacturing Co. v. Cowing, 105 U. S. 256, 26 L. Ed. 987, "for the new and special purpose in view the old pump was useless without the improvement." In Hurlbut v. Schillinger, 130 U. S. 456, 9 Sup. Ct. 584, 32 L. Ed. 1011, where the patent was for an improvement in a concrete pavement, "the invention of Schillinger was a very valuable one," and "the defendant's concrete flagging derived its entire value from the use of the plaintiff's invention." In Crosby Valve Co. v. Safety Valve Co., 141 U. S. 441, 12 Sup. Ct. 49, 35 L. Ed. 809, where the invention of Richardson's patent was held to have given the entire value as a marketable article to the infringing valves, the patent was for a safety valve compared with which the prior art presented likenesses "only as the anatomy of a corpse resembles that of a living being." When the patented improvement is one of subordinate importance, or the value of the machine as a whole depends more upon the presence of the unpatented parts, a finding that the marketable value of the whole has been created by the patented part can seldom be correct.

Whether in the present case the whole equipment, or only the triple valve, is to be regarded as the marketable article within the meaning of the last branch of the rule, is, in the view which we take, a question which need not be considered.

Inasmuch as the complainants did not attempt to separate or apportion the defendant's profits and their own damages between the patented and the unpatented features of the quick-action triple valve, it was incumbent upon them to prove that the entire value of the defendant's quick-action valve as a marketable article was properly and legally attributable to the patented features. What they did prove, and all they proved, was that purchasers of triple valves generally demanded some form of quick-action valves, and that, except to a very limited extent, purchasers could not be found for valves without these features. This falls short of proof that only the patented form could supply the demand, and does not meet the requirements of the second branch of the rule.

As has been already suggested, the cases are exceedingly rare in which the whole marketable value of a machine, or of a collection of

devices, can in reason be attributable to a patented feature which embraces merely an improvement in one of its parts. Marketable value is ordinarily the result of various conditions independent of the normal value of the machine itself, and the contribution which the patented part gives to marketable value is necessarily dependent more or less upon these conditions. Enterprise, exploitation, and business methods in introducing and marketing the thing are generally as important a factor in its intrinsic value. The effect of the control of the market, whether by lawful or illegal endeavors, in fixing the marketable value of many products, is shown by what has been accomplished by some of the so-called "trusts" of the day. Where that part of the thing is of such paramount importance that it really creates the value of the whole, the doctrine that the value of the monopoly of the part is measured by the marketable value of the whole may reasonably be applied, notwithstanding the marketable value of the whole may from extraneous causes be out of all proportion to its normal value. But, where that part of the thing is relatively an unimportant factor in the normal value of the whole, the application of the doctrine is likely to lead to inequitable results. The present case is an illustration. The defendant, and other competitors of the complainant's saw there was an opportunity to create a demand for new air-brake apparatus which should have the quick-action feature, and they undertook to produce such apparatus and stimulate the demand. Such apparatus embodied many inventions, some of which were and some of which were not open to public use. The defendant, supposing it had produced apparatus which would not infringe any outstanding patents, bent its efforts to exploit that kind of apparatus and discourage the sale of all others, and thus the defendant largely contributed to the marketable value of that kind of apparatus. It now appears that its apparatus did infringe one of the outstanding patents. It may turn out that it infringes some of the others, as the complainants claimed when they sued the defendant for infringing their earlier patent. It does not seem equitable that, because the defendant appropriated certain parts in that apparatus which belonged to the complainants, it should be charged with appropriating the whole marketable value of the apparatus. The theory that it did appropriate the whole value is inconsistent and quite irreconcilable with the original theory of the action and the claim of the complainants that they were entitled to profits and damages because the defendant had appropriated certain other parts that belonged to them.

The case is not one where the patented quick-action valve created the market which defendant supplied. We have no wish to belittle the contribution made by the patented invention to the automatic air-brake art, but we cannot ignore the fact that before the invention of the patent in suit Mr. Boyden had supplied the devices which met the needs of railroads and which were in all respects satisfactory. Referring to this device, the Supreme Court said in Westinghouse v. Boyden Power Brake Co., 170 U. S. 572, 18 Sup. Ct. 724, 42 L. Ed. 1136: "It solved at once, and in the simplest manner, the problem of quick-action, whereas the Westinghouse patent [his earlier pa-

tent, No. 360,070] did not prove to be a success until certain additions had been incorporated into it." And that the patented invention was not of dominating importance in controlling the market for automatic air-brake apparatus is apparent from the fact that the defendant, when it was enjoined in the present action from using the invention, introduced a substitute which enabled it to retain the market for its own apparatus which complainants have never asserted to infringe the patent.

We are constrained to the conclusion that because there was no satisfactory proof apportioning the profits of the patented attachment as distinguished from those of the entire equipment, or as distinguished from those of the triple valve itself, the decree below was erroneous and should be reduced to merely a nominal recovery.

The decree is reversed, with costs of this court, and with instructions to the court below to modify the decree conformably with this opinion.

## On Rehearing.

PER CURIAM. So far as this application for a rehearing proceeds upon considerations which were urged, but did not convince us, at the original hearing, as none of them were overlooked, it is not justified by the rules of practice. So far as it proceeds upon errors of fact pointed out in the opinion of the court, the application is justified by the rules of practice, and would present meritorious reasons for a rehearing if these errors were in respect to matters which had any serious influence upon the decision.

The court certainly did not overlook the contention for the appellants that the patented attachment created a new market for automatic air-brake equipments which practically precluded the sale of such equipments in which the attachment was not a part. As the complainants had given no evidence whatever of the profits made by the defendant by the manufacture and sale of the attachments or of their own loss of profits through sales of attachments diverted from them by the defendant, necessarily they were not entitled to a recovery within the rule announced in Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, and in other adjudications to the same effect, unless their evidence showed that the defendant's sales of equipments were wholly attributable to the presence of the attachment as one of the parts thereof. Our decision went upon the ground that, notwithstanding there was satisfactory evidence in the proofs that the quick-action attachment was so desirable that there would have been only a limited sale for the other parts without it, there was no satisfactory evidence that the defendant could not have made any sales without it, and none to show how many of the defendant's sales were due solely to the presence of the attachment. The testimony of Mr. Vilas that there was no market for the other parts without the quick-action attachment, as well as other testimony for the complainants to the same effect, was effectually refuted by the evidence of the sales made during the period of infringement by the complainants themselves. It appeared that during this period the sales made by the complainants of equipments without the patent-

ed attachment were 18,450, and their sales of equipments with the patented attachment were 239,500. From all that appears, the complainants could have sold a larger number of equipments without the attachment if they had tried to do so; and, if it could be assumed that they could not have sold a larger number, it would not follow that the defendant could not have sold a larger proportionate number. Unless the court was at liberty to find that because complainants' sales during the period of infringement were in the proportion of about 13 equipments having the attachment to 1 without it the defendant's sales must have borne the same ratio, and that consequently 13 out of every 14 sales made by the defendant must have been attributable to the presence of the attachment, there was no adequate basis for the recovery. This would have been mere conjecture.

The court fell into an error of fact in stating that Boyden had supplied equivalent apparatus for the patented attachment before the latter was invented by Mr. Westinghouse. The fact was as stated in another part of the opinion. Boyden's quick-action valve was in use during the period of infringement, but, as it was not open to the use of the defendant because it had been patented by Boyden, the fact was not mentioned as constituting a bar to recovery. The circumstance that it was in use was adverted to in the opinion merely for the purpose of indicating that the invention of the patent in suit was not one which created the market which the defendant supplied. Mr. Westinghouse was undoubtedly the inventor of the quick-action attachment, and it is not open to doubt that this was an exceedingly valuable invention. While the complainants were entitled to all the profits which they lost and all the profits which the defendant realized by the latter's sales upon this attachment, there was no basis for a recovery, because the proofs did not show what these profits were, and the assumed basis that all the profits made by the defendant and lost by the complainants through sales by the defendant of the entire apparatus of which the patented apparatus was a part were recoverable, because without the latter there would have been no market for the other parts, was not justified by the proofs.

The application is denied.