ROTH et al. v. HARRIS et al.

(District Court, N. D. New York. July 23, 1912.)

1. PATENTS (§ 318*)—INFRINGEMENT—PROFITS RECOVERABLE.

Although a patent is for an improvement only, the owner may be entitled on an accounting to recover the profits made by an infringer from the manufacture and sale of the entire structure containing such improvement, where the latter is of paramount and controlling importance in giving market value to the structure as a whole, by converting what was before unsalable at a profit into a commercial success with ready sale at a large profit; and in such case it is immaterial that the actual cost of the structure aside from the improvement is much greater than that of the patented device.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

2. PATENTS (§ 312*)—INFRINGEMENT—ACCOUNTING FOR PROFITS—BURDEN OF PROOF.

Where, on an accounting for infringement of an improvement patent, complainant has proved the receipt of profits by defendant from the

manufacture and sale of the improved structure, and that defendant has so kept its books that the profits realized from the patented and unpatented features cannot be separated, defendant has the burden of proof to make such separation, or it will be charged with all the profits.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 543–549; Dec. Dig. § 312.*]

3. PATENTS (§ 312*)—INFRINGEMENT—ACCOUNTING FOR PROFITS.

An infringer of the Hobart patent, No. 765,240, for a tune-sheet attachment for piano players, held chargeable on an accounting, under the evidence, with all the profits made from the manufacture and sale of pianos containing the patented device.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 543–549; Dec. Dig. § 312.*

Accounting by infringer for profits, see note to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8.]

In Equity. Suit by Alfred P. Roth and another, doing business as Roth & Engelhardt, against Louis H. Harris, doing business as the Automatic Musical Company, and the Automatic Musical Company. On exceptions by defendants to master's report finding profits derived from infringement of the Hobart patent, No. 765,240, for a tune sheet attachment for piano players, to be $282,884.76, and damages nominal. Exceptions overruled, and final decree entered in conformity with report.

See, also, 162 Fed. 160.

Briesen & Knauth, of New York City, for complainants.

Kerr, Page, Cooper & Hayward, of New York City, for defendants.

RAY, District Judge. The bill was filed December 21, 1905, against Louis H. Harris, who carried on business as the Automatic Musical Company, for the infringement of United States letters patent to Hobart, No. 765,240, and United States letters patent to Whitmore, No. 791,967. The decree, affirmed by the Circuit Court of Appeals, dismissed the bill as to the Whitmore patent and affirmed it as to the Hobart patent, finding infringement of claims 1 to 4, inclusive, and claim 6. By a supplemental decree filed May 3, 1909, the Automatic Musical Company, Incorporated, was made a party defendant and included in the accounting. The evidence and exhibits are quite voluminous, and the examination thereof has involved a vast amount of work.

I dismiss without much comment the exceptions of the complainants, as I agree with the master that the evidence is too indefinite and uncertain to justify a finding of damages in the respects where exceptions were taken.

I do not think it necessary to go at length into the history of the matter which resulted in the infringement complained of. It is sufficient to say that the infringement of the Hobart patent was willful and persistent and that the defendants derived large profits therefrom. The Hobart patent was issued July 19, 1904, and defendants commenced the infringement knowingly very soon thereafter. Prior to that time the complainants had done business at St. Johnsville, N. Y., making and selling an automatic piano with a roller mechanism within

the piano case which was not commercially successful. With the Hobart patent attachment they became a marked commercial success and sales increased. Harris was the infringer down to September 1, 1906, but thereafter the infringement was by Harris and the Automatic Musical Company, Incorporated.

The Whitmore patent, held anticipated, was for the contents of what is called a trigger box, which holds, with other things, an endless tune sheet. The tune sheet formerly was in fact a part of the piano itself, and it was detached with some difficulty. The defendants contend, and not without some reason therefor, that the Hobart invention, or improvement, is not upon the piano as a whole, or even the box that holds same, but upon and for the detachable feature of such box. Based on this contention, they present the argument that by reliable evidence it was incumbent on the complainants on this accounting to apportion the profits arising from the sales of pianos having this attachment covered by the Hobart patent between the detachable box and detachable features thereof and the other parts of the piano, or show by reliable and satisfactory evidence that the entire profits were attributable to the removable box; in other words, the use of the device of the Hobart patent.

The defendants contend that the burden of doing this was on the complainants, and that such burden has not been sustained. The defendants rely in the main on Garretson v. Clark, 111 U. S. 120, 121, 4 Sup. Ct. 291, 28 L. Ed. 371, where the court held:

"When a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance. He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated. The rule on this head is aptly stated by Mr. Justice Blatchford in the court below: 'The patentee,' he says, 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.'"

The defendants also rely on Keystone, etc., v. Adams, 151 U. S. 139, 14 Sup. Ct. 295, 38 L. Ed. 103, where it was held:

"While it is undoubtedly established law that complainants in patent cases may give evidence tending to show the profits realized by defendants from use of the patented devices, and thus enable the courts to assess the amounts which the complainants are entitled to recover, yet it is also true that great difficulty has always been found, in the adjudicated cases, in applying the rule that the profits of the defendant afford a standard whereby to estimate the amount which the plaintiff is entitled to recover, and in defining the extent and limitations to which this rule is admittedly subject. Such a measure of damages is of comparatively easy application, where the entire machine used or sold is the result of the plaintiff's invention; but when, as in the present case, the patented invention is but one feature in a machine embracing other devices that contribute to the profits made by the defendant, serious difficulties arise."

The patent in that case was not for a combination, and this leads to the inquiry whether the complainants' Hobart patent is for a mere improvement or an existing device, old in the art, or for a new thing as a whole, a combination of elements, all of which but one, perchance, may be old, but with a new arrangement and a new result.

The first and broadest claim of Hobart reads as follows:

"An auto-pneumatic piano case having a duct bridge, combined with a box having a tune-sheet and tune-sheet rollers, and means for detachably securing said box to said case, substantially as specified."

The Circuit Court of Appeals said of it:

"The invention of Hobart is not generic, but it marks a distinct improvement in the art. By arranging and adjusting the tune-sheet in a separate box before it is attached to the piano, he avoids the difficulty which had theretofore existed, and which frequently resulted in the tearing and, destroying the sheet and spoiling the music. The adjustment of the sheet to the old rollers required the services of a person of skill and experience, whereas a novice can successfully make the necessary adjustment in the patented structure. By detaching the box the entire apparatus is in plain view, and it is manifest that a sheet can be removed and a new one substituted without encountering any of the difficulties which existed when the rollers were attached directly to the back frame of the piano."

The claim is for a combination, viz., an auto-pneumatic piano case having (1) a duct bridge combined with (2) a box having (3) a tune-sheet, (4) tune-sheet rollers, and (5) means for detachably securing said box to said case; the piano case meaning. This combination was new, and under the evidence seems to have increased the sale of such pianos vastly. The master in his report says:

"The claims of the patent are not for the trigger box alone, but for a combination which included practically the entire auto-pneumatic electric piano, and none of the component parts of the combination are capable of operation separately or marketable as an auto-pneumatic piano. The improvements of the Hobart invention made the instruments salable, and it seems to have been the one small thing to make the whole a success. The invention must have been an important one, and of great value, or it never would have been so long and so bitterly contested. There were no infringers save defendants, and their sales in opposition to complainants' may be reasonably attributed in a great degree to the presence of the patented device. Complainants' and defendants' pianos embodying it commanded prices far in excess of other self-playing instruments."

The evidence seems to sustain this statement or finding of fact. The master also says:

"The question then remains as to whether the profits on the *whole* instrument found as above, to wit:

| | |
|---|---:|
| From July, 1904, to December 31, 1905 | $ 59,224 90 |
| From January 1, 1905, to August 31, 1906 | 54,521 65 |
| From September 1, 1906, to June 20, 1908 | 169,138 23 |
| Total | $282,884 78 |

shall be allowed complainant, or whether the profits shall be confined to the manufacture and sale of the trigger box alone, which profits have not and in all probability cannot be segregated, and are therefore merely nominal."

[1] I think it a fair inference from the facts that such pianos without this combination attachment were not a commercial success,

and that with it they were, and that defendants were the only infringers, and that the profits to defendants on the whole instrument were derived from the use of this Hobart invention. The inference is not conclusive; but it was incumbent on the defendants, under all the circumstances of the case, to rebut it. It does not appear that the patented improvement was of subordinate importance in giving market value to the pianos and producing profits from their manufacture and sale; but, on the other hand, the evidence shows that the patented improvement was of paramount and controlling importance in effecting sales and producing profits. Without it there were few sales and no profits, but with it there were large sales, commercial success, and large profits. Under such circumstances and such a state of facts it is immaterial that the actual cost of the piano, aside from the patented device or combination, was much greater than that of such device.

If a machine costing $500 to construct is not marketable, not a commercial success, and cannot be sold at a profit, but with a patented improvement incorporated therein, which only costs $50 in the making, is a commercial success, sells readily, and at a large profit over the cost of making and selling, are we to attribute the profit to the use of the patented device incorporated into the machine or not? If this piano without the patented device of Hobart had been a fair commercial success, had sold at a profit, and the business had been fairly successful, but with the patented device had been somewhat more so, merely, a different problem and question of fact would be presented. It became a question with the master whether to apply the principles of Westinghouse et al. v. New York Air Brake Co., 140 Fed. 545, 72 C. C. A. 61, or those of Brennan & Co. v. Dowagiac Mfg. Co., 162 Fed. 472, 89 C. C. A. 392, in this case. He thought the latter case more applicable, and this court agrees with him.

[2] It is apparent from the record that defendants by their own acts have so confused the ascertainment of the exact profits derived from the Hobart patent device that it is impossible, as the master says, to separate them from the profits, if any, derived from the manufacture and sale of the remaining parts of the piano. The complainants have proved profits, the use of the Hobart device, and the confusion occasioned by the acts of the defendants. I think the case is brought within Westinghouse Electric & Manufacturing Co., Petitioner, v. Wagner Electric & Manufacturing Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. ——, decided by the Supreme Court of the United States, on certiorari to the United States Circuit Court of Appeals for the Eighth Circuit, June 7, 1912, and not yet officially reported. In that case it appeared, amongst other things:

"On the hearing it appeared that the Wagner Company manufactured various electrical appliances that had been made in the same shop, by the same workmen, and under the same general superintendence as that employed in making the transformers. No account had been kept, which would show the cost of labor and shop expenses attributable to these transformers. Nor was there anything on the books indicating what, if any, profit had been realized from their sales. The gross receipts of $2,314,744.75 were mingled. The books only showed a gross profit of about 8 per cent.; but it appeared that

the plant had grown and the business had extended during the period covered by the accounting. * * * The defendant then claimed that the infringing transformers contained elements of the patent which were not embraced in claim 4, for which alone this suit was proceeding, and that no profit due to those elements could be recovered in this case, unless the plaintiff apportioned the gains due solely to claim 4."

The court said: '

"1. The question as to who has the burden of proof, in cases like this, is one of great practical importance and constantly arises in patent cases. There has been much controversy on the subject and a conflict in the decisions. The authorities cited in the briefs of the two litigants, and others bearing on the subject, have been examined; but we shall not undertake to separately review them, for they disagree, not so much as to the rule, as to its application. It will be sufficient for the present purposes to say that:

"(a) Where the infringer has sold or used a patented article, the plaintiff is entitled to recover all of the profits.

"(b) Where a patent, though using old elements, gives the entire value to the combination, the plaintiff is entitled to recover all the profits. Hurlbut v. Schillinger, 130 U. S. 472 [9 Sup. Ct. 584, 32 L. Ed. 1011].

"(c). Where profits are made by the use of an article patented as an entirety, the infringer is liable for all the profits, 'unless he can show—and the burden is on him to show—that a portion of them is the result of some other thing used by him.' Elizabeth v. Paving Co., 97 U. S. 127 [24 L. Ed. 1000].

"(d) But there are many cases in which the plaintiff's patent is only a part of the machine and creates only a part of the profits. His invention may have been used in combination with valuable improvements made, or other patents appropriated by the infringer, and each may have jointly, but unequally, contributed to the profits. In such case, if plaintiff's patent only created a part of the profits, he is only entitled to recover that part of the net gains. He must, therefore, 'give evidence tending to separate or apportion the defendant's profits and .the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and .tangible, and not conjectural or speculative; or he must show, by . equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.' Garretson v. Clark, 111 U. S. 121 [4 Sup. Ct. 291, 28 L. Ed. 371].'

"The real controversy arises in applying this principle to those cases where it is impossible to separate the single profit into its component parts.

"2. In considering the question presented by the record here, it is to be borne in mind that Congress had legislated (Rev. Stat. § 4921 [U. S. Comp. St. 1901, p. 3395]) with a view of affording the patentee ample redress against the infringer. It not only makes the latter liable for damages—sometimes three-fold damages—but for all profits derived from the use or sale of plaintiff's invention. The rule as to the burden of proof has, however, been so applied that this statutory right has been often nullified by those infringers who had ingenuity enough to smother the patent with improvements belonging to themselves or to third persons. In such cases the greater the wrong the greater the immunity; the greater the number of improvements the greater the difficulty of separating the profits. And if that difficulty could only be converted into an impossibility the defendant retained all of the gains, because the injured patentee could not separate what the guilty infringer had made impossible of separation. Manifestly such consequences demonstrate that either the rule or its application is wrong. The rule is sound, for it but announces the general proposition that the plaintiff must prove its case and carry the burden imposed by law upon every person seeking to recover money 'or .property from another. But the principle must

not be pressed so far as to override others equally important in the administration of justice. It may serve to illustrate the rule and its limitations, if, at the risk of stating the obvious, we apply it to the various steps of this case. * * *

"4. Having by books and other data proved to the satisfaction of the master the existence of profits, the plaintiff had carried the burden imposed by law, and established every element necessary to entitle it to a decree, except one. As to that the act of the defendant had made it not merely difficult, but impossible, to carry the burden of apportionment. But plaintiff offered evidence tending to establish a legal equivalent. It had proved the existence of a fact 'which, whether treated as a rule of evidence or as a matter of substantive law, would entitle it to a decree for all the profits. The method was different from that mentioned in the second branch of the rule in the Garretson Case, 111 U. S. 121 [4 Sup. Ct. 291, 28 L. Ed. 371]; but the plaintiff had now presented proof to demonstrate its right to the whole of the fund because of the fact that the defendant had inextricably commingled and confused the parts composing it. This result would not be in conflict with the principle which in the first instance imposed the burden of proof on the plaintiff, but merely gave legal effect to a new fact which as a matter of law entitled the patentee to a particular judgment. It presented a case where the court was called on to determine the liability of a trustee ex maleficio, who had confused his own gains with those which belonged to the plaintiff. One party or the other must suffer. The inseparable profit must be given to the patentee or infringer. The loss had to fall on the innocent or the guilty. In such an alternative the law places the loss on the wrongdoer. * * *

"But when a case of confusion does appear—when it is impossible to make a mathematical or approximate apportionment—then from the very necessity of the case one party or the other must secure the entire fund. It must be kept by the infringer, or it must be awarded, by law, to the patentee. On established principles of equity, and on the plainest principles of justice, the guilty trustee cannot take advantage of his own wrong. The fact that he may lose something of his own is a misfortune which he has brought upon himself; and if, as argued, the fund may have been made by the use of other patents also, for which he may be liable in another case, it is again a misfortune which he has brought upon himself, and an instance of a double wrong causing double liability. He cannot appeal to a court of conscience to cast the loss upon an innocent patentee, and by judicial decree repeal the provision of Rev. Stat. § 4921, which declares that in case of infringement the complainant shall be entitled to recover the 'profits to be accounted for by the defendant.' * * *

"It may be argued that, in its last analysis, this is but another way of saying that the burden of proof is on the defendant. And no doubt such, in the end, will be the practical result in many cases. But such burden is not imposed by law, nor is it so shifted until after the plaintiff has proved the existence of profits attributable to his invention and demonstrated that they are impossible of accurate or approximate apportionment. If, then, the burden of separation is cast on the defendant, it is one which justly should be borne by him, as he wrought the confusion."

It seems to me that, complainants having proved the existence and receipt of profits by defendants attributable to the use by it of the Hobart patent or device, the infringement complained of, and having exhausted its means of separating those derived from the use of the patent from the others, if any, and having shown a confusion of these profits by the acts of the defendants, it made a proper case for charging the defendants with all such profits, and, in effect, cast on them the duty or burden of showing that some definite part of such profits was not derived from the use of the Hobart combination device.

[3] Defendants contend that they did not have the benefit of all

the profits included in the master's report, that pianos were sold and notes taken for the purchase price and discounted by defendants, and that same were never paid by the makers. Defendants say it is unjust and inequitable to charge them with profits never actually received, except in the form of worthless notes. But I fail to find anything in the record which will justify any specific deduction for this reason. It is all left to guess and speculation.

I conclude, on the authority of the case referred to and decided June 7, 1912, that the exceptions to the master's report should be overruled, and that the report and findings be confirmed, and a final decree entered for $282,884.78, with interest, and that defendants pay the master's compensation and disbursements, which will be fixed later.

So ordered.