VAN BRUNT v. LA CROSSE PLOW CO.

(District Court, W. D. Wisconsin.  October 10, 1913.)

No. 45.

1. PATENTS (§ 318*)—SUIT FOR INFRINGEMENT—PROFITS RECOVERABLE.

On an accounting by an infringer, where the patented article is only a part of a machine, but the entire value of the whole machine as a marketable article is properly and legally attributable to the patented feature, the profits are to be calculated on the whole machine, and such entire profits are also recoverable although the salability of the machine is in part due to other features owned by defendant, where it is impossible to determine what proportion of the sales are due to the latter features.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

2. PATENTS (§ 318*)—SUIT FOR INFRINGEMENT—PROFITS RECOVERABLE.

The evidence showed that sales of a grain seeder made by defendant in certain territory were due entirely to the use thereon of a furrow opener which was an infringement of complainant's patent, but that in other parts of the country, with different soil, such furrow opener was not an important factor and the salability of the machine was due more to other features. *Held*, that complainant was entitled to recover the entire profits made by defendant on the machines sold by it in the first territory.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

In Equity.  Suit by Willard A. Van Brunt against the La Crosse Plow Company for infringement of the Van Brunt patent No. 659,881, for a furrow opener for use on grain drills.  On exceptions to report of special master in respect to accounting for profits.  Modified.

Staley & Bowman, of Springfield, Ohio, for complainant.
Fred Gerlach, of Chicago, Ill., for defendant.

SANBORN, District Judge.  An account having been directed by the Circuit Court of Appeals (168 Fed. 927, 94 C. C. A. 331), the case was referred to Cameron L. Baldwin, of La Crosse, as special

master, to take and report on the accounting for profits. No damages are recoverable, because complainant, the owner of the patent, is not engaged in the manufacture or sale of the patented device. The common rate of royalty charged by the patentee on numerous licenses was 25 cents.

The patent relates to a furrow opener for use upon seeding drills, and the complainant is entitled to recover all profits realized by the defendant for the use of the furrow opener, called the Van Brunt scraper, during the infringing period, July 19, 1905, to March 20, 1909. The total profits of defendant on the grain drills sold during that period, and on which the infringing scraper was used, were $17,396.17. The question is: What part of these profits were due to the presence of the infringing scraper? We quote from the master's report as follows:

"A grain drill consists of a great many different parts, such as carrying wheels, draft mechanism, seed box, seed measuring mechanism, seed delivery mechanism, adjusting mechanism, and furrow openers; but, broadly speaking, we may say that the machine consists of the furrow opener, the seed planting device, and the devices which deliver the seed in the proper quantities to the furrow opener. It appears from the evidence that furrow openers are detachable, and that grain drills are made by most companies so that the shoe, the double disc, the open delivery type of single disc, and the closed delivery type of single disc, may be interchanged. Complainant or defendant might have fitted out a machine that under certain conditions would properly plant the seed, and have all four of these types on the same machine; so that, while the furrow opener in order to do its work must be used in conjunction with the other parts of a grain drill, it is readily seen that it may be regarded as a mechanism all by itself.

"I find that the entire profit on the furrow openers is legally attributable to the infringing device. This does not include parts of the seeding machines other than the furrow openers, which other parts I hold are equitably entitled to the same percentage of profit as the furrow openers.

"The master furnished a general preliminary draft of his report to counsel for their criticisms, and the replies suggested that the master had overlooked the rule that an infringer 'is only liable for the increment of profit over and above what might have been made by the use of the nearest device open to the infringer in common use, and which would accomplish the same or similar results. The master has that rule in mind, but cannot find any such device; hence resort must be had to some other method. Plaintiff has proved profits on the entire grain drills. The almost universal judgment of manufacturers of single disc closed delivery furrow openers was that it was necessary to use the infringing device in order to get into the market. What could be more persuasive that there was an increment of profit over other devices that might have been used? The evidence shows that the disc itself was a well-known device, and was open to the public. Under the Packham patents, which have been upheld, there was a disc in combination with a shield on the convex side thereof, the use of which was to hold the furrow open, and which deflected the seed into the furrow. This was known as the 'open delivery disc furrow opener.' This open delivery was adapted to use in the mellower and dryer soils of the middle west and southwest.

"The close delivery type, with the narrow scraper, was most adapted to use in wet, sticky soils of the Northwest. The seeding conditions demanded as much space between the furrow openers as possible, to prevent the accumulation of dirt, stubble, etc., between the furrow openers. Defendant's furrow opener had a patented disc bearing, and also a patented device for adjusting the distance between the discs, so that they might be kept the same distance apart, securing the advantage of sowing the grain in drills equidistant from each other.

"The evidence shows that the use of complainant's scraper upon closed delivery single disc furrow openers was very marked in its effect upon sales. In fact, the evidence shows that in the territory where the closed delivery single discs were used it practically drove other closed delivery single discs out of the market. It was copied by the leading makers of single disc closed delivery drills; Beaver Dam Manufacturing Company, making the 'Ideal'; J. S. Rowell Manufacturing Company, making the 'Tiger'; Monitor Drill Company, making the 'Monitor'; Brennan & Co., Southwestern Agricultural Works, making the 'Kentucky'; Thomas Manufacturing Company, making the 'Thomas'; Peoria Drill & Seeder Company; Hoosier Drill Company, making the 'Hoosier'; Owatonna Manufacturing Company, making the 'Owatonna'; Superior Drill Company, making the 'Superior.' The above includes all of the leading competitors of complainant and defendant in the markets where single disc closed delivery drills were sold.

"It is claimed by defendant that there were other closed delivery single disc furrow openers which were open to it. The Hayes single disc is said to be such a device. This device has a broad, thick scraper, covering about one-quarter of the convex surface of the disc, and is cast integral with the boot; but the evidence shows that only 4,000 seeding machines were ever put on the market of this make. It was open to the public, and surely would have been copied if it had been considered of any value by manufacturers.

"Then there was the Fountain City, Mast or Buckeye (all the same device), a device which had the scraper attached to the disc bearing. The scraper is much broader than the infringing device. This was sold only to a limited extent. The company which made it went into the hands of a receiver, but for what reason is not shown. This device was not copied.

"The defendant claims that the Dowagiac did not infringe, and that it could have used the Dowagiac single disc furrow opener. The defendant offered no evidence to show that it did not infringe, though it did go to the trouble to show that the Hayes furrow opener could have been made without infringement. The record discloses that the Dowagiac shoe had the great bulk of the drill business throughout the entire northwest prior to 1900, but that during the infringing period its single disc furrow openers did not cut much of a figure in the market.

"The wide scraper used after the injunction should be noticed. It is more fully discussed as a standard of comparison. It was not used during the infringing period. It was in the subconscious prior art, only coming into the conscious practical art after the injunction.

"The evidence shows that Joseph Capistran and one or two other farmers near Crookston, Minn., broke off the end of the boot and the scraper, and worked the drills without a scraper at all. This is what defendant would have had to put on the market if it had not added complainant's scraper to the disc, and the suggestion is that if two farmers used it it might have been a success if placed on the market. A conclusive answer is that no manufacturer ever attempted it. Allowing the manufacturers of closed delivery single disc drills ordinary business sense, we may safely say that the single disc closed delivery drills went into the market where there was call for them, and that, if any other kind of a scraper could have succeeded, why was it not used by some of those manufacturers? Why was not the Hayes copied, or the Fountain City, or the Dowagiac, if it did not infringe, or a drill without a scraper placed on the market? Where was there a single disc closed delivery drill, without an infringing scraper, that found its way to a successful market? Each of those successful makes had an individuality of construction, and a variety of advertising and salesmanship.

"There is testimony in the record that in the opinion of several witnesses some other kind of a scraper would have made the single disc closed delivery furrow opener just as salable as the narrow infringing scraper. But the overwhelming judgment of the manufacturers of closed delivery single discs at the time on the field deemed such infringing scraper necessary to success. Opinions that some other device would have done just as well does not weigh very much in the scale as against such overwhelming business practice.

"The master, therefore, concludes that the infringing scraper was the thing that made single disc furrow openers salable during the infringing period, and, while the infringing scraper was a very small part mechanically of defendant's furrow opener, it was the predominant feature in its salability."

After considering the proofs as to various suggested standards of comparison, and examining the law, the master reaches the conclusion that no such standard existed. He finds no device in common or general use open to defendant, to which it would probably have resorted, which would have produced as nearly a similar result as possible, and which was near enough to the infringing device to be of any avail. The infringing device having made the furrow opener marketable, as well as the whole seeding machine, defendant was held liable for all the profits. On this matter the master finds:

"I further find that the furrow opener is a separable part of a seeding machine; that the parts of the seeding machines sold by defendant, other than the furrow opener, belonged wholly to defendant; upon which was a valuable patented device known as the horse-lift; that such horse-lift was a valuable selling feature; that an approximate apportionment between the furrow opener and the other parts of the machine may equitably be made by dividing the entire profits on the machines sold between the furrow openers and the rest of the machine, giving each an equal percentage of profit based upon the shop cost of the furrow openers and of the other parts of the machines; that such approximate apportionment results in dividing the profit, $6,607.76, to the complainant, and $10,788.41, to the defendant.
"I find as a conclusion of law: That a decree should be entered for the plaintiff for $6,607.76; and that as an alternative, in case the court should find the approximate apportionment improper, I recommend that a decree be entered for the complainant for $17,396.17."

It appears from the record, and the opinion of the Court of Appeals, that the Van Brunt device was particularly adapted to a special use, that of working in the sticky soils of the Red River valley, generally referred to as the Northwest. In other places it was no better than other forms of drills, but in the sticky soils of the Northwestern States, where the spring wheat seeding is done early in the season, often before the frost is out, it had great success; the master finding that it practically drove other single disc forms off the market in the region referred to. In those soils it will go through the ground without clogging. Prior to its introduction the shoe opener was in quite general use, but under certain soil conditions would not scour, or if the ground was hard and trashy would ride over the surface and plant the seed at an uneven depth. Outside the Northwest, or spring wheat section, grain is sowed in the fall, when the ground is dry, so that the narrow scraper blade of the patent is not of particular importance.

The master expressly finds that the Van Brunt scraper on single disc drills practically drove out of the market all other single disc drills and the shoe drill. He does not decide that Van Brunt drove out all drills, only other single disc. No finding is made as to double disc drills, one type of which sold extensively in the Northwest during the infringing period. A number of the witnesses testify that the Monitor double disc drill was the leading type in that region. A thorough reading of the testimony leaves no doubt that the master's

finding is supported by practically all the evidence. From this finding the master concludes that defendant could not have sold any single disc drills except those having the patent scraper in the Northwest; therefore all its profits were due to Van Brunt. Defendant excepts to this conclusion, urging that the chief and distinctive feature of its sales was its patented horse-lift, and that its disc bearing and strong frame were important selling points also.

This horse-lift feature is new with defendant, and is covered by patent owned by it. It is not a part of the furrow opener. Prior to this invention hand levers were used to raise the drag bars or furrow openers out of the ground, and to put them into the ground. The horse-lift does this by utilizing the power from the axle of the drill, thus doing away with the hard manual labor formerly required. The master refers to this and two other patented devices owned by defendant in this way:

"On the furrow opener itself it had a patented disc bearing of its own, and also a patented adjustable drag bar. These are so confused with the infringing scraper, and are so dominated by it as a selling feature, that no separation is possible. The scraper made the furrow opener salable, and the furrow opener the rest of the machine. There was a patented horse-lift for raising the furrow opener, which would be attractive to all those who do not like to work a lever and raise the heavy furrow openers by hand. This is a good talking point, and an aid as a selling feature."

This seems to involve an implied finding that the horse-lift contributed to the profits; but he later expressly finds that the entire profit was due to the Van Brunt scraper, because the profits due to the different features could not be separated.

[1] Under the late case of Westinghouse E. & M. Co. v. Wagner E. & M. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, the question respecting an infringer's improvements is whether they add to the profits. If they do, "the burden of apportionment was then logically on the plaintiff, since it was only entitled to recover such part of the commingled profits as was attributable to the use of the invention." The case then goes on to hold that, while this burden is on the plaintiff, he meets and overcomes it and casts it upon the defendant, by showing confusion of profits by the act of defendant. When the plaintiff, by data furnished by defendant, taken from its books, or by other proof, shows that no attempt has been made, or perhaps would be possible, to keep separate the profits due to defendant's improvements from those due to the patented feature taken and infringed by defendant, the latter, even though acting in perfect good faith (as in this case), must stand the loss. The profits due to plaintiff's patent and defendant's patents cannot be separated, never could have been separated by the very nature of the case, because no one can tell just what feature of the seeder influenced a purchaser to buy. But since it turns out that defendant was a wrongdoer, even though an innocent one, the loss must fall upon it, rather than the plaintiff, whose property was wrongfully appropriated. This is the meaning of the Westinghouse Case, as applied to the case at bar. And the same rule applies to the whole machine, unless a fair

apportionment can be made from the evidence between the furrow opener and the balance of the seeder. This was done by the master in his alternative recommendation above quoted. He recommends that the total profits on all the seeders sold be divided as the cost of the furrow opener is to the cost of the balance of the machine.

The testimony of many witnesses leaves no doubt of the influence on defendant's seeder sales of the horse-lift and the other features patented by it. The dealers talked horse-lift and disc bearing and single disc and toe scraper. To quote from Westinghouse v. N. Y. Air Brake Co., 140 Fed. 545, 72 C. C. A. 61:

"The cases are exceedingly rare in which the whole marketable value of a machine or of a collection of devices can in reason be attributable to a patented feature which embraces merely an improvement in one of its parts. Marketable value is ordinarily the result of various conditions independent of the normal value of the machine itself, and the contribution which the patented part gives to marketable value is necessarily dependent more or less upon these conditions. Enterprise, exploitation, and business methods in introducing and marketing the thing are generally as important a factor in its intrinsic value."

While all defendant's sales of seeders were not induced by the patented feature infringed, yet, as it cannot be discovered what proportion of them were due to the patent and what to defendant's patented features, plaintiff is technically entitled to the whole, because, as between the two, defendant was finally found to have been in fault.

If the Van Brunt scraper had never been invented, the grain growers of the Northwest would not have stopped raising grain, but would have used the best machines they could get to put their seed in the ground. Some would have used one kind of seeder and some another, as they did even after Van Brunt came on the market; but the evidence shows that some of them would have continued to use the Dowagiac shoe, just as a large number did before, and some of them the double disc furrow opener, preferably the Monitor type, during the latter period of the infringement. Very few of them would have used a disc furrow opener with a large scraper, like the Hayes or the Fountain City, because no one thought of using them in the territory in question.

If any standard of comparison is to be adopted, therefore, it would seem clear that it must be the shoe, as contended by plaintiff's counsel, because the Monitor double disc was not open to the public, though the older form of double disc was. The question would then be, in the language of Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664: What were the profits derived by defendant from the use of the Van Brunt device "over what it would have had in using other means then open to the public, and adequate to enable it to obtain an equally beneficial result"? In other words, defendant had the choice of using the Van Brunt furrow opener or the Dowagiac shoe, or possibly the ordinary double disc. Having used the former, without right, it must account for what it made by such use over what it could have made by the use of another form. The master, however, has found that it could not have made anything by the use of the shoe, because that was driven from the market by the Van Brunt device; and this appears to be sustained by the testimony. Nor could it have

made anything by using the old form of double disc, since this was not suited to the soil of the northwest region. Thus there would have been no profit by the use of either, and plaintiff is therefore entitled to all the profit made by defendant either on the whole seeder or on the furrow opener only, if capable of apportionment. The shoe was better than sowing by hand, and Van Brunt was better than the shoe. Since defendant could not have sold seeders with the shoe or double disc in competition with Van Brunt, the master has found that (in one aspect of the case) all the profits on the whole seeder are fairly attributable to the patented device, without which defendant could not have made any profits whatever. Defendant took Van Brunt's discovery and was thereby enabled to make money which it would not otherwise have been able to make. If this is true, the money belongs to Van Brunt.

The rule thus stated is the theory of the master, and of some of the federal courts, like Novelty Glass Co. v. Brookfield, 170 Fed. 946, 95 C. C. A. 516; s. c. 172 Fed. 221, 97 C. C. A. 25, and Pressed Prism Co. v. Continuous Glass Press Co. (C. C.) 150 Fed. 355; Garretson v. Clark, 111 U. S. 121, 4 Sup. Ct. 291, 28 L. Ed. 371, approved in this point in Westinghouse E. & M. Co. v. Wagner E. & M. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653.

"If the improvement is required to adapt the machine to a particular use, and there is no other way open to the public of supplying the demand for that use, then it is clear that the infringer has by his infringement secured the advantages of a market he would not otherwise have had, and that the fruits of this advantage are the entire profits he has made in that market." Manufacturing Co. v. Cowing, 105 U. S. 253, 26 L. Ed. 987, cited in Carborundum Co. v. Electric, etc., Co. (C. C. A.) 203 Fed. 976, 982.

It is entirely settled by these cases that where plaintiff's patent is only part of a machine, but "the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature," then the profits are to be calculated on the whole machine. No standard of comparison under these conditions can exist. The master finds this situation in regard to the Van Brunt scraper. He finds that it drove out other like forms, and practically dominated the field, so far as single disc seeders were concerned, and the evidence sustains his conclusion.

[2] The master has reported an alternative finding, in favor of allowing all the profits on defendant's seeder business, not only in the Northwest territory, where the Van Brunt furrow opener dominated the trade, but also in other parts of the country where it did not do so. Three-fifths of defendant's sales were in the Northwest. This fact presents some difficulty. In other territory the patented device did not drive out other forms, as it did in the Northwest. Other devices in common use produced as good results, apparently with equal facility and cost. It is easily inferred from the evidence that the horse-lift feature would have sold any form of drill in territory outside the Red River valley or Northwest, where the infringement did not add to defendant's gains. An infringer is only to pay for such advantages of the patented machines over machines that were open to his use.

Columbia Wire Co. v. Kokomo Steel & Wire Co., 194 Fed. 108, 114 C. C. A. 186; Black v. Thorne, 111 U. S. 122, 4 Sup. Ct. 326, 28 L. Ed. 372. Complainant did not make any considerable sales in the territory outside the Northwest. In this territory the evidence seems to show that the principal selling feature of defendant's drill was its patented horse-lift. This point was also an important element in increasing its sales of the infringing drills in the Northwest, but in that region the Van Brunt invention was also a feature which induced sales, so that other points may be ignored. In the Middle West and the Southwest the Van Brunt scraper was not particularly important, and there the chief reason for defendant's sales were the horse-lift, adjustable drag bar, and other features of its patents. In other words, outside of the Northwest the Van Brunt device was no better than other types, was not even as good as defendant's infringing type. It seems quite clear from the opinion of the Court of Appeals in this case that, if the use of the device in the Northwest had not existed, defendant would not have been held an infringer at all.

Defendant should therefore pay three-fifths of its total seeder profits, unless some equitable basis of adjustment can be found between the furrow opener and other parts of the machine. The master decided that plaintiff is entitled to all the profits realized on the complete machines sold by defendant, because it cannot be ascertained how much was due to other features than the patent scraper, and because that scraper dominated the single disc market; but he suggests that the defendant may equitably be allowed to retain that part of the profits made on the seed planting, seed distributing, horse-lift, and those parts of the seeders other than the furrow openers, through a calculation based on the relative gross cost of the different parts. In a certain sense this suggestion seems equitable, since it might possibly compensate defendant for those sales which were induced by the horse-lift. But to cut down the profits from $17,185.17 to $6,607.76, nearly two-thirds, on an absolute uncertainty, is certainly unwarranted. The master does not recommend, but only suggests, that it be done, if the court thinks proper.

By means of the patented scraper and its own horse-lift, defendant was enabled to sell seeders which otherwise it could not have done. Being unable to separate the results due to these two features, the law compels it to account for the profits due to both. This is a hard rule; but, as defendant was finally decided to have been in the wrong in using the patent scraper, it is the only rule which can be applied with justice to each party. Defendant took plaintiff's property without license, and used it so as to leave the result in doubt, so it is less unjust to defendant to compel it to pay more than it ought to pay than it would be to plaintiff if defendant should be compelled to pay less than it ought to pay.

There should be a decree for 60 per cent. of the total profits of $17,396.17, or $10,437.70, with interest from the date of the master's report, and costs.