### BAGLEY & SEWALL CO. v. EMPIRE WOOD-PULP CO.

(Circuit Court of Appeals, Second Circuit. August 1, 1893.)

No. 95.

1. PATENTS FOR INVENTION — IMPROVED PAPER MACHINE — INVENTION — INFRINGEMENT.

Letters patent No. 393,538, issued November 27, 1888, to Charles H. Campbell, for an invention consisting, as covered by the first and second

claims, of a combination to relieve the main frame of a paper machine from the downward pressure of the pressure rolls, between which the wet pulp passes, and for adjusting the guiding roll so as to keep the felt upon which the pulp lies in proper alignment as it passes through the pressure rolls, are in that respect for a patentable invention, and are infringed by a similar machine in which the main frame is relieved from pressure.

**2. SAME—WANT OF CO-OPERATION.**
The combination of the third claim by which each end of the guide roller is adjusted, so as to bring the felt into proper relation with the pressure rolls, is not patentable, in that the separate sets of devices are an aggregation, and do not combine with each other, but work out an independent and separate result, not due to any co operating action.

**3. SAME—WANT OF NOVELTY.**
The fourth claim of such patent contains nothing patentable, in view of the Downington Company's machine of 1882, in which the horizontal arms are bolted to the frame at one end and to the sill at the other end, whereas in the machine of the patent the arms are integral with the frame.

Appeal from the Circuit Court of the United States for the Northern District of New York.

In Equity. Bill by the Bagley & Sewall Company against the Empire Wood-Pulp Company for infringement of letters patent for an improved paper machine. From a decree dismissing the bill, complainant appeals. Reversed.

C. H. Duell, for complainant.

Risley & Robinson, for defendant.

Before LACOMBE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This is an appeal from a decree of the circuit court for the northern district of New York, which dismissed the complainant's bill in equity for the alleged infringement of letters patent No. 393,538, dated November 27, 1888, to Charles H. Campbell, assignor of the complainant, for an improved paper machine. The patented improvements are particularly applicable to the machine for sheeting wood pulp, which is technically termed a "wet machine." The objects of the invention which are of importance in this suit were threefold. The first was to relieve the main frame from the heavy downward pressure of the pressure rolls between which the wet pulp is carried; the second was to provide means for adjusting the guiding roll so as to keep the endless felt upon which the pulp lies in proper alignment as the felt passes through the pressure rolls; the third was to furnish adjustable supports for the stretcher roll, so that it shall be in alignment with the frame. The parts of the machine which relate to these three respective improvements are described as follows: In this description the language of the inventor is substantially used. The first improvement consists of a main frame, called, in the patent, "Frame A," upon which is mounted a pressure head frame, called "H," carrying two large press rolls, the lower of which journals in a box which is attached to frame H, at one end, by a shoulder, and at the other end by a screw rod. The upper end of frame H is formed with a projecting head, which is provided with a vertical nut and sleeve, through which the screw rod passes. A nut tightens the hold of the screw rod upon the lower box, and the rod is supported in such a

manner, in conjunction with the shoulder, as to relieve the main frame from the pressure of the rolls. Through the vertical nut a screw passes, which is coupled to the upper press roll journal box, and is provided with a collar between which and the journal box a stout spring is interposed. This screw is for the purpose of adjusting the pressure of the spring upon the upper roll.

Fig. 1.

The mechanism of the second improvement is as follows: A standard is mounted upon the forward end of the main frame, and carries at its upper extremity an arm, upon which is mounted the couch roll. From the top of the standard rises a bracket, to which.

is pivoted an upwardly projecting arm, at the upper end of which is a journal box carrying one end of the guide roll. Below the journal box the arm is formed with a segmental slot, through which, and the upper end of the bracket, a screw passes, which has a clamping nut at its outer end. The corresponding pivoted arm on the opposite side of the machine has above the journal box a swivel nut attached to it, through which a screw passes to the rear end of the machine, being supported by a suitable bracket provided with a hand wheel. The mechanism of the third improvement consists of horizontal arms projecting from the rear of the main frame, and provided with longitudinal ways, on which are movable mounted brackets carrying the stretch roller. These brackets are adjustable by nuts and adjusting screws.

The first improvement is described and claimed in the first and second claims of the patent, and the other improvements are respectively claimed in the third and fourth claims.

The first claim is as follows:

"(1) In combination with the frame, A, and pressure rolls, K, J, the pressure-head frame, H, formed separately from the frame, A, and with the sleeve, H, on the upper end thereof, the journal box, b, seated adjustably on the lower portion of the frame, H, and provided with the sleeve, b″, and the screw, S, adjustably connecting the sleeves, H″, and b″, and supporting the box, b, independently of the frame, A, to entirely relieve said frame from the pressure of the aforesaid rolls, substantially as described and shown."

The second claim specifies the particular means for supporting the lower journal box, viz. a shoulder on the box, resting on a shoulder on the pressure head frame; and also the mechanism which is coupled to the upper press-roller journal box, viz. the screw, provided with a collar and spring.

The elements of the combination described in the third claim are numerous, but the important portion of the claim consists in the means employed for the adjustment of the pivoted arms which support the guiding roll. A segmental slot in one arm allows that arm, when unclamped, to be swung forward or rearward. The other arm is moved by the screw which passes to the rear end of the machine. The roller is moved towards or away from the pressure rolls, and, the arms being adjustable independently of each other, either edge of the felt upon the roll can be adjusted without changing the tension of the edge upon the other end of the roll.

The fourth claim states with care the combination of all the elements which have been mentioned in connection with the third improvement.

The circuit judge was of opinion that the first and second claims were not infringed, and that the third and fourth claims were invalid for want of patentable novelty.

The defendant's machine is one of four machines made by the Lowville Iron Company. The castings used in the first of these machines were purchased from D. B. Gotham of the firm of Gotham & Baker, foundry men. They had sent E. V. R. Plank to a mill in Brownville, N. Y., owned by James A. Outterson, in which was

the first Campbell machine, to take the measurements of it. From these measurements Plank made patterns, from which castings were made, and one set was purchased by the Lowville Iron Company. As made, the four machines were alike, and corresponded exactly with the machine of the Campbell patent. After this suit was brought, three,of the machines were altered by removing the shoulder from each of the lower pressure-roll boxes and the shoulder from each pressure-head frame, H, so that each box rested on the frame, A. It is not contended that by this construction the first and second claims are now infringed. The shoulders are necessary parts of the invention described in those claims.

The circuit judge was of the opinion that before this change was made, although all the elements of the first and second claims existed in the defendant's machine, the journal box actually rested on the main frame, which was not relieved from pressure. This conclusion was based upon the testimony of Mr. Hughes, one of the Lowville Iron Company, that the shoulders in the four machines were fitted so that the journal box of the lower pressure roll, when placed on the upper surface of frame, A, could be moved by sliding the same on the frame, and the shoulders would overlap each other, and that the box was not supported independently of frame, A. This testimony is not substantially supported, is not in accordance with the testimony of the persons who saw these machines, and is not, we think, in accordance with the probabilities which the history of the machines indicates. The exhibits which were introduced by the defendant as anticipatory, or as showing such a state of appliances in machines having pressure rolls as to preclude patentable invention in the Campbell machine, fail to convince the mind that the improvement of the first and second claims was either anticipated or was not patentable. No pre-existing machine contained the specific means of supporting the journal box independent of the main frame which are incorporated in these two claims, and a manifest weakness and insecurity characterize the defendant's attempts to deny patentable invention. It is also reasonably certain from the history of the Campbell machine that these claims describe combinations which are practically operative and successful.

The third claim is for the combination of means by which each end of the guide roller is adjusted. The patentee says in his specification that the segmental slot upon one of the arms in which is journaled one end of the roller "allows the arm, when unclamped, to be swung forward or rearward, to carry the roller a greater or less distance from the couch roll and pressure rollers, as may be required to properly support and guide the felt, and also that by turning the screw which is connected with the arm at the opposite side of the machine, the roller is swung with its axis into various angles to the axis of the couch roll and pressure rolls." This adjustment is to take up the slack which sometimes occurs on one edge of the felt. In other words, as it is correctly stated by the complainant's expert: "The two arms being adjustable independently of each other allows the

tension of either edge of the felt to be adjusted without interfering with the tension of the other edge." The object of the invention, so far as is disclosed by the patent, was the independent adjustability of each end, so that each end of the felt might be brought from time to time, as occasion required, into proper relation with the pressure rolls. Each end is adjusted by a different group or set of devices. One group is akin to the adjusting mechanism in letters patent to J. T. Obenchain, No. 334,-460; the other is akin to the adjusting mechanism in letters patent to James Dawson, No. 310,127. But the invalidity of the claim rests upon the fact that the separate sets of devices are an aggregation which do not combine with each other, and each of which works out an independent and separate result, which is not due to any co-operating action. Pickering v. McCullough, 104 U. S. 310.

The invention of the fourth claim contained nothing patentable, in view of the Downington Company's machine of 1882, in regard to which testimony was given by Guyon Miller. The difference between the two machines, so far as the improvement described in the fourth claim is concerned, is that the horizontal arms of the earlier machine were bolted to the frame at one end and to the sill at the other end, whereas in the patented machine they are integral with the frame. This improvement is not patentable.

The decree of the circuit court is reversed, with costs, with instructions to enter a decree and for further proceedings in accordance with the foregoing opinion.