FORCE v. SAWYER–BOSS MFG. CO. et al.

(Circuit Court of Appeals, Second Circuit. January 20, 1906.)

No. 63.

1. PATENTS—DAMAGES FOR INFRINGEMENT—SUFFICIENCY OF PROOF.

A complainant is entitled to recover only nominal damages on account of the competition of defendant by the sale of an infringing article, where on the accounting it does not furnish evidence showing the amount of its loss on that account, or even the profit it made on the patented article when sold.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 426, 579.]

2. SAME—PROFITS.

Where the devices covered by a patent were mere improvements in the line of simplicity of construction and consequent saving in cost of manufacture, and there is no satisfactory evidence that they rendered the machine as a whole more salable, an infringer is only liable for profits realized from the use of the patented parts which were new and wrongfully appropriated by him, and the complainant must furnish evidence from which the profits may be thus apportioned.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

See 131 Fed. 884.

This case comes here on appeal by defendants from a final decree of the United States Circuit Court for the Eastern District of New York in favor of complainant against the defendant Sawyer-Boss Manufacturing Company in the sum of $5,889.02, for profits realized by defendant from the manufacture of a hand stamp which infringed complainant's patent, No. 462,065, granted October 27, 1901, to Willard E. Sawyer, and against the defendant Holihan for $1,172.63, as his individual share in the profits made by Stewart & Co. from the sale of the infringing machine, and upon cross-appeal by complainant from the decision of said court, rejecting his claim for damages suffered, growing out of defendants' unlawful competition.

Henry Schreiter, for complainant.

Peter B. Olney, for defendants.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The questions of law involved in these appeals have been so fully considered in recent decisions of this court that in order to determine the·issues raised it is only necessary to apply said decisions to the facts proved in this case. The interlocutory decree, adjudicating the validity of claims 1 and 2 of said patent, and their infringement by defendants, and ordering an injunction and accounting, was affirmed in this court on the opinion of the court below. Upon the accounting, the master reported that the complainant had failed to prove the profits made by defendants in the manufacture and sale of the infringing machines, or the net profits that the complainant would have realized if the defendants had not infringed, and reported that complainant was entitled to recover nominal damages only. The court below, on the hearing of complainant's exceptions to the master's report, concluded that the complainant had failed to show the amount of profits lost by defendants' competition, and sustained the finding of the master that complainant was not entitled to recover therefor, but it held that complainant was entitled to recover certain profits claimed to have been made by the defendant corporation and by the defendant Holihan. As to the claim of complainant that he was entitled to recover the net profits, which he would have made, except for defendants' competition,·the master reported as follows:

"Complainant's computation of the·damages which he claims in addition to profits, on the theory that he would have sold 4,076 more machines at his own prices, if the Sawyer-Boss Manufacturing Company had not made that number, rests on the same basis, that only cost of labor and materials are to be deducted from the gross prices, and I also think it cannot be assumed that he would have sold so many more machines if the defendants had not infringed. There were other hand stamping machines which customers might have taken, provided they could not have bought defendants' machines and were looking for a cheaper machine than complainant's. * * * In this case it is probable that complainant suffered damage, but the state of the proof does not warrant the finding of any particular sum, and only nominal damages, therefore, can be reported."

And the court said as follows:

"It is undoubted that the wrongdoer compelled the complainant to reduce its prices, but the complainant even then probably made a profit,

and it sold more machines on account of the reduced price. What, on the whole, it lost does not appear. It was within the power of the complainant to illustrate to what extent its whole profit fell off by reason of the competition. It did not do so, and the court is unable to know to what extent it was finally injured by the competition. Therefore, no damages growing out of this unlawful competition can be allowed."

These statements are fully supported by the evidence, and we concur therein. The complainant failed to show even the profit which he made on the machines sold at reduced prices.

The court differed with the master as to the evidence of profits received by defendants from the manufacture and sale of the infringing machines, and held that the complainant was entitled to recover said profits, on the grounds stated as follows:

"It is considered that the combination shown in the first claim covered the substantial profit of the patented articles, and that the chief value is found therein, although the stop-pin may have facilitated sales. It is further considered that the sales of the Defiance machines were made possible by employing the patented combination. In other words, the salability of the device resulted from the use of the patent. This conclusion results from the evidence of the business done by means of the patented device, both by the complainant and the defendants. The whole history of the business shows that the new article was the inducement of the sale. There is no satisfactory evidence from which it could be concluded that any sale would have been made had not the machine involving the combination been offered."

If the evidence sufficiently sustains this view, the decision must be affirmed. The underlying and determinative question in this case is as to the character of the improvements covered by the patent.

Claim 1 of the patent in suit is as follows:

"(1) In a stamp, the combination of a main frame, a series of similarly spaced numbering wheels, corresponding ratchet-wheels, detents for these numbering wheels and ratchet-wheels, operating radially within a support, pawls for imparting motion to said ratchet-wheels, a movable yoke sustaining the numbering and ratchet-wheels, a framelike lever carrying the pawls and pivotally connected to said yoke and also to the main frame, and an inking-lever fulcrumed to the main frame and pivotally connected between its ends with said lever which moves the pawls, substantially as specified."

This claim covers a very narrow improvement upon the hand stamps of the prior art. The file wrapper of the patent in suit shows that its claims were repeatedly rejected, and that claim 1, which was originally claim 3 of the patent, was not allowed until it had been amended by changing it so as to read:

"An inking-lever fulcrumed to the main frame and *pivotally* connected, *between its ends*, with the said lever which moves the pawls."

That is to say, without the underscored words "pivotally" and "between its ends" the claim stood rejected. The patent itself fails to contain any definite statement as to what the patentee has invented, or what is the object sought by, or advantage derived from, the claimed improvement.

Claim 2 is as follows:

"(2) In a stamp, the combination of a main frame, a longitudinally-movable rod fitted thereto and carrying similarly-spaced numbering wheels, slots in said rod, a cross-pin connected to the main frame and passing through said slots, and an enlargement in one of said slots for receiving an enlarged

portion of said pin to lock the rod in its depressed condition, substantially as specified."

The new feature covered by this claim is the sliding stop-pin with "similarly-spaced numbering wheel." Neither complainant nor defendants ever charged anything for the sliding stop-pin, or increased their prices by reason of its introduction. Its cost was about $2\frac{1}{2}$ cents. As to its value, complainant's witness, Chase, says:

"I should say that the stop-pin was the more valuable device of the two. It is pretty hard to place an actual intrinsic value on different devices without being fully familiar with the market and demand for such machines. Speaking as an individual, I would give this particular device in this instance a value of $1.00, as affecting the retail price of a machine, if I myself were to be the purchaser."

It appears that the Ajax and Bates machines, with stop-bolts, were sold for years prior to the bringing of this suit, and complainant's witness, Dye, admitted the salable value of the old Defiance numbering machine, which did not have the sliding stop-pin. Defendant Holihan says:

"The locking-pin does not add anything to the commercial or salable value of a hand numbering machine."

He also says, referring to defendants' Shaw numbering machine:

"On account of the fine printing qualities of this machine, we took it up in August, 1901, and have sold about 1,600 of these machines without the spring locking-pin, and have never once been asked why a locking-pin has not been put upon them. As can be readily seen the machine is of much cheaper construction than the Triumph machine, and would necessarily have to sell for a cheaper price."

It appears that the improvements covered by these claims were adopted by complainant because of their extreme simplicity and the low cost of manufacture. Complainant's witness says that "a somewhat simpler construction is embodied in the swinging frame of the machine" of the patent in suit than in that of complainant's Paragon Automatic machine. The Conqueror machine, made by complainant, contains the stop-pin device, and the lever-acting device to which the inking-pad lever is pivoted, and which also supports the working pawl. It embodies all the improvements of the patent in suit. After the injunction herein defendants modified some 200 machines which they had on hand, containing these improvements, and advanced the prices and sold all of them, and no complaint was made of the absence of the improved locking device, and there was no falling off in sales. The locking-pin used on said changed machines was old, and was in common use long prior to the date of the patent in suit.

These facts indicate that the devices covered by the claim of the patent in suit were mere improvements, and, as stated by complainant's own officers, were in the line of simplicity of construction and consequent saving in cost of manufacture. There is no satisfactory evidence that the machine was more salable by reason of these improvements; the testimony of defendants, referred to above, tends to show that their sales were unaffected by the presence or absence of said devices.

There is no evidence that the improvements introduced any new function or result, nor any satisfactory proof that the machines were by reason thereof more convenient or practical for the user, or more commercially successful. In short, there is no evidence that the patented improvements were a dominant feature of the machine, or contributed to its sale, or created a new article, or obviated prior objections in practical operation, or which shows that the sales may not have depended upon advertising, changed discounts, and other mere business methods. Furthermore, there is evidence that other machines, not containing these patented improvements, were on the market, and were salable. In these circumstances, the defendant is only liable for profits realized from the use of that part of the patented invention which is new, and which he has wrongfully appropriated, and the complainant must furnish evidence from which the profits may be thus apportioned, or he cannot recover. Ingels v. Mast, 6 Fish. Pat. Cas. 415, Fed. Cas. No. 7,033; McCreary v. Pennsylvania Canal Co., 141 U. S. 459, 462, 12 Sup. Ct. 40, 35 L. Ed. 817; Brickill v. Mayor, etc., of City of New York, 112 Fed. 65, 50 C. C. A. 1.

The evidence as to defendants' profits may be summarized as follows: The defendant corporation made Triumph, Paragon, and Defiance numbering machines, and other kinds of goods at the same time, and could not tell from its books the separate cost of the various infringing machines. Its treasurer and foreman testified that as the employés worked on numbering machine work and on other work, he had no way of ascertaining the amount of labor required for the production of the infringing machines, and could not tell their cost or that of the materials used, or the quantity. It regulated its prices according to the prices of competing machines in the market. It was asked by defendants, Stewart & Co., its selling agents, to make goods at these prices, and it undertook to do so; but the only way it could determine whether it had made a profit or loss at the end of a month was by comparing the accounts of cost with accounts of moneys received from Stewart & Co.

As stated by defendant Holihan:

"The reason the Sawyer-Boss Mfg. Company could not get at the cost of the machines was the same one that applies to all small concerns who cannot put into effect expensive systems to follow through details of the work, but are compelled to trust to general results, and this I believe is in force in all small manufacturing concerns."

This witness explains at length the reasons why it would be practically impossible to keep such a detailed statement of cost. Complainant's witness Dye, who, as a member of the firm of William A. Force & Co., was engaged in supervision of accounts, general executive work and selling goods, testified as follows:

"158 X-Q. Did Force & Co. keep books which showed the monthly or yearly profits or losses in the manufacture and sale of the Paragon Automatic, Paragon Lever, or the Conqueror numbering machines? A. Our books of accounts do not show specifically profits or losses on any individual article that we make or sell. .

"159 X-Q. Did Force & Co., keep books that show the cost of such machines mentioned in the last questions? A. No books are kept showing the aggregate cost of the numbering machines."

Defendants' witness Holihan further asserts that the estimate of cost of manufacture of defendants' machines, made by complainant's witness Chattaway was erroneous, by reason of omissions of various items which should have been included, and that defendants spent large amounts for advertising, as they were manufacturing under a patent, and supposed their profits would accrue for years to come; and that:

"The Sawyer-Boss Manufacturing Company's books and Stewart & Co.'s statements furnished each month give the full transactions, dollar for dollar, and by slight figuring the exact cost to the Sawyer-Boss Mfg. Company of these machines will be obtained, although it will show that the machines cost more than we got for them. This accounts for the loss by the Sawyer-Boss Mfg. Company and their indebtedness to Stewart & Co."

As to complainant's estimate of defendants' profits the master says as follows:

"Complainant admits that the only basis for computation of profits made by the defendant, the Sawyer-Boss Manufacturing Company, in manufacturing the machines they furnished Stewart & Co., is to be found in an estimate of amount of labor and material required for his own manufacture and given by one of his witnesses. Too many other elements enter into the cost of manufacture to justify the acceptance of this estimate as conclusive. * * * The defendant, the Sawyer-Boss Manufacturing Company, made many articles besides the infringing machine. It could not be shown by their books and statements what the cost of manufacture of infringing machines was. The general result of the whole business could be shown but not the profit on any particular branch of it. Complainant therefore urges that his own estimate of the cost of labor and material in making a machine deducted from the price at which he sold it affords a basis for computing his loss by multiplying this difference by the number of machines that he would have sold, which gives the above sum of $17,739.96. I do not think this method of computation is proper and conclusive; it does not give sufficient data to compute the net gains and profits either of the complainant or the defendant. As to the profits and sales by Stewart & Co., none of their selling expenses being testified to, it is left to the master to guess what profits they made in this branch of their business."

The evidence fully supports this finding.

In Westinghouse v. New York Air Brake Co. (C. C. A.) 140 Fed. 545, Judge Wallace, delivering the opinion of this court, reviewed the authorities on the question of recoveries in infringement cases, and distinguished between those where the patented part was of such paramount importance that it really created the value of the whole article, and those where such part was relatively an unimportant factor in the normal value of the whole, or where such value depended chiefly upon the presence of the unpatented parts. There the court recognized the well-settled rule that in cases of the former class the infringer should be held accountable for all profits, as a trustee ex maleficio, by reason of having confused profits made by the use of a trust property with those from his own property, and commingled them so that they could not be separated. The court, however, quoted from the opinion in Wales v. Waterbury Mfg. Co., 101 Fed. 126, 41 C. C. A. 250, as follows:

"Such a rule would work unjustly in many cases,—as where the patented feature is of an insignificant part of a machine or article; and it is probably because of its manifest inequity in such cases that the courts have placed upon the complainant the burden of proof."

The court also quoted from the opinion of the Supreme Court of the United States in Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, the following:

"The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented features and the unpatented features, and such evidence must be reliable and tangible, and not conjectural and speculative; or he must show by equally reliable and satisfactory evidence that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine as a marketable article is properly and legally attributable to the patented feature."

In these circumstances, irrespective of the apparently unconscionable conduct of the defendants in infringing a patent which they had sold, and depriving the complainant of his profits in the manner shown, a majority of the court is constrained to hold that he has failed to sustain the burden of proof as to what were the gains, profits and advantages made by the defendant, the Sawyer-Boss Manufacturing Company, in the manufacture, or by the defendant Holihan by the sale, of the comparatively unimportant infringing portion of the machines manufactured and sold, and that, therefore, that portion of the decree of the court below, which adjudicates that the complainant recover said profits realized by defendants, must be reversed.

The cause is remanded to the court below, with instructions to modify the decree in accordance with this opinion, but without costs to either party in this court.