UNDERWOOD TYPEWRITER CO. v. E. C. STEARNS & CO. et al.

(Circuit Court of Appeals, Second Circuit. July 20, 1915.)

No. 270.

1. PATENTS ⬥⟿318—INFRINGEMENT—ACCOUNTING FOR PROFITS.

On an accounting for profits for infringement of a patent for a tabulating attachment for a typewriting machine so constructed that it may be attached to or removed from the machine without interfering with its use as a typewriter, complainant is not entitled to recover all of the profits made by the infringer on the entire machine, but only such only as are shown to be legally attributable to the tabulators; and where the infringing device was also patented, and was an improvement on that of the patent in suit, recovery should be limited to the profits derived from the use of the infringing, as distinguished from the noninfringing, elements of the tabulators sold, if apportionment is possible.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 963–969, 971; Dec. Dig. ⬥⟿318.]

2. PATENTS ⬥⟿319—ACCOUNTING FOR INFRINGEMENT—DAMAGES.

While damages are recoverable for infringement, regardless of whether or not profits have been allowed or have been made by the infringer, damages cannot be awarded, without evidence either of lost sales or to establish a royalty basis for their recovery; and the court cannot assume that, if defendant had not sold the infringing machines, complainant would have made the sales, especially where there were other and large competitors in the field.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 293, 970; Dec. Dig. ⬥⟿319.

Accounting by infringer for profits, see notes to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8; Clark v. Johnson, 120 C. C. A. 389.]

⬥⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3.** APPEAL AND ERROR ⬥═266—PRESERVATION OF GROUNDS OF REVIEW—MASTERS—EXCEPTIONS TO REPORT.

No exceptions to a master's report, not taken before the master, can be raised in an appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1552–1565, 1568–1571; Dec. Dig. ⬥═266.]

**4.** PATENTS ⬥═287—SUIT FOR INFRINGEMENT—JOINT LIABILITY.

Where one defendant manufactured infringing articles, some of which were bought by its codefendant, conducting an independent business, and resold at its own prices, neither defendant is liable for the infringement by the other.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 853, 856; Dec. Dig. ⬥═287.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Underwood Typewriter Company against E. C. Stearns & Co. and the Typewriter Inspection Company. From the decree, complainant appeals. Affirmed.

This cause comes here on appeal from a final decree entered on November 3, 1913, in the United States District Court for the Southern District of New York. The Underwood Typewriter Company is a corporation organized and existing under the laws of the state of New York, and is the owner of United States letters patent No. 436,916, issued on September 23, 1890, as well as letters patent No. 452,268, issued on May 12, 1891, to J. B. Gathright for improvements in typewriting machines. E. C. Stearns & Co. is, in like manner a corporation organized and existing under the laws of the state of New York, and is charged with infringing the above patents. The Typewriter Inspection Company bought and sold Stearns machines in New York City, but had no agency contract with the Stearns Company. The Stearns Company had its factory at Syracuse, N. Y., and began to manufacture in 1902 the Stearns typewriters, although the machines first came on the market in a commercial way about 1906. This was only one branch of its business. The tabulator complained of was put on the machines when first made. The Stearns Company found the business of manufacturing typewriters a constant loss, but continued in their manufacture, hoping to retrieve its losses, until some time in 1912, when that part of its business was abandoned, because too much money had been sunk in the attempt to carry it on successfully.

Patent No. 436,916 and patent No. 452,268 were held valid by this court in Wagner Typewriter Co. v. Wyckoff, Seamans & Benedict, 151 Fed. 585, 81 C. C. A. 129 (1907). The name of the Wagner Company was subsequently changed to that of Underwood. The defendant in that case was found to have infringed letters patent No. 436,916 by the use of a tabulating mechanism on the well-known Remington typewriter. After that decision, the bill of complaint was filed, an injunction issued, and the matter was referred to a master to take and state an account of profits and damages. The master reported that complainant had proven no damages as against either defendant; that complainant was not entitled to any profits from E. C. Stearns & Co., as that company had made no profits from the sale of infringing machines; and that complainant was entitled to recover the nominal sum of $1 as profits as against the Typewriter Inspection Company.

The case coming on to be heard upon the report of the master and upon the exceptions taken to the report by complainant, the District Court ordered and decreed that complainant should have judgment and execution against the Typewriter Inspection Company for the sum of $1,328, with interest from June 2, 1913, together with its costs, but in all other respects confirmed the master's report.

---

Arthur v. Briesen and Fred A. Klein, both of New York City, for appellant.

Alfred Wilkinson, of New York City (Julian C. Harrison, of New York City, of counsel), for appellees.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). There is no question of infringement involved here. It is not disputed that the Stearns visible typewriters, provided with what are known as tabulating attachments, infringe the Underwood typewriters. The matter we have to consider is the right of the Underwood Typewriter Company to recover from the defendants profits and damages, because of this established fact of infringement. An interlocutory decree was entered on April 20, 1908, referring the matter to a master to take and state an account of the profits and damages as to letters patent No. 436,916; and on August 4, 1908, a further interlocutory decree was entered, which directed him to take and state an account of profits and damages as to letters patent No. 452,268. The master filed his report on May 15, 1913. The first of these patents expired September 23, 1907, and the other on May 12, 1908. An injunction against further infringement on the first patent was issued and in force from April 1, 1907, to its expiration, and on the second patent from April 22, 1908, to its expiration. The period of accounting is practically three years; the first infringing machine having been shipped in April, 1905, and the last in April, 1908. Testimony at considerable length was taken and exhibits were offered.

The questions involved were very carefully presented before the master by full arguments and elaborate briefs on both sides. His report is unusually careful and exhaustive as to the facts, covering 37 printed pages, and it is not necessary to review it in detail. He found that 2,365 typewriters containing the infringing tabulator were made by the Stearns Company, of which 2,282 were sold and 7 were used; that the receipts from the sale of the infringing machines amounted to $133,483.61; and that the cost of the machines amounted to $180,413.19. No profits had been made by the Stearns Company, but there was a loss of $46,929.58. He also found that the Typewriter Inspection Company received from its sales of infringing machines $4,470, that the cost to that company of the machines sold amounted to $3,042, and that the profit realized by the company amounted to $1,328.[1]

The master also reported the number of machines with the modified tabulator sold by each of the defendants and the receipts from the sale of such machines. Those sales we do not need to consider, inasmuch as in the opinion of the master concurred in by the court below and by this court, the machines with the modified tabulator did not infringe. The original tabulator on the Stearns machines having been found to infringe the plaintiff's patent, a modification of it was made by sawing off the lug to which the bar which operated the connect-

---

[1] This is plainly a clerical error, which escaped the notice of the court below and of counsel in this court. The amount should have been $1,428.

ing lever was fastened, removing the lug, the arm, the connecting lever, and the screws which held the lever in position. The removed parts were destroyed, and the screw holes plugged, so that after the expiration of the plaintiff's patents entirely new parts had to be made, and were made, to replace those which had been destroyed. The defendant acted in the matter in entire good faith and upon the advice of careful counsel. There is no analogy between what was done in this case and what was done in Underwood Typewriter Co. v. Elliott-Fisher Company (C. C.) 156 Fed. 588 (1907), where the modification consisted in merely detaching temporarily a part, so disconnecting the mechanism of the tabulator that the operation of the tabulator lever would not simultaneously release the carriage detent. The Elliott-Fisher Company kept the part which it temporarily removed, and either sent it with the machine, thereby leaving the purchaser free to immediately replace it, or kept it in an envelope ready to be sent, and with the purpose of sending it to the purchaser upon the expiration of the patents. In this case the mutilated structure, as the court below observed, by reason of location of remaining parts, lacks the facility of operation which was found in the machine of the Elliott-Fisher Company.

On the filing of the master's report the court below concurred with the master in holding that no decree could be entered against the Stearns Company for profits or damages; that company having made no profits and no damages having been proven. It decreed that that company should have judgment and execution against the plaintiff for its costs. The court disagreed with the master in thinking that only nominal damages should be awarded against the Typewriter Company, and adjudged that the plaintiff have judgment against that company for the sum of $1,328 (that being the profit the master reported the company had made), with interest from June 2, 1913 (the date of the filing of the master's report), together with its costs.

A patentee whose patent has been infringed has a right to file his bill in equity to recover the amount of gains and profits that the infringers have made by the use of his invention. This rule was established by a series of decisions under Patent Act July 4, 1836, c. 357 (5 Stat. 117), although that act simply conferred upon the courts of the United States general equity jurisdiction, with the power to grant injunctions, in cases arising under the patent laws. See Tilghman v. Proctor, 125 U. S. 136, 144, 8 Sup. Ct. 894, 31 L. Ed. 664 (1888). The motive of the infringer of patented rights is taken away by requiring him to pay the profits of his labor to the owner of the patent. The profits made by the infringer of a patent belong to the patentee, and it is not consistent with the ordinary principles of equity to allow a wrongdoer to profit by his own wrong.

In Elizabeth v. Pavement Co., 97 U. S. 126, 138, 24 L. Ed. 1000 (1877) Mr. Justice Bradley, speaking as to profits recoverable in equity by a patentee, says:

"The subject, as a whole, is surrounded with many difficulties, which the courts have not yet succeeded in overcoming. But one thing may be affirmed with reasonable confidence: That, if an infringer of a patent has realized no

profit from the use of the invention, he cannot be called upon to respond for profits. The patentee, in such case, is left to his remedy for damages. * * * It may be added that, where no profits are shown to have accrued, a court of equity cannot give a decree for profits, by way of damages, or as a punishment for the infringement. Livingston v. Woodworth, 15 How. 559 [14 L. Ed. 809]."

The principle announced is the principle which the master and the court followed as respects the Stearns Company. No error can be found in the conclusion that the plaintiff can claim nothing in the way of profits from that company, as no profits were made.

[1] The master reported:

"That under the rule laid down by Judge Wallace in the Air Brake Case the complainant, unless it could prove the profit made upon the tabulator itself, as distinguished from a mere proportionate part of the profits on the whole machine, would have been limited to a nominal recovery."

As such profit had not been shown, he reported that the plaintiff was entitled only to a nominal recovery of $1 as against that company. By his reference to the "Air Brake Case" the master undoubtedly had in mind Westinghouse v. New York Air Brake Co., 140 Fed. 545, 72 C. C. A. 61 (1905). That case was decided by this court, and it was held that, in determining the profits and damages recoverable for infringement of a patent for a device which constitutes only one feature of the machine or structure sold by defendant, it is the settled rule that the burden of proof rests on the complainant to separate or apportion defendant's profits between the patented and unpatented features and by evidence which is reliable and tangible, or he must show by equally satisfactory evidence that profits and damages should be calculated on the whole machine, for the reason that its entire value as a marketable article is properly and legally attributable to the patented feature. In that case only a nominal recovery was allowed, although the master had found that defendant's profits amounted to $36,945.

Now it is evident that in the case at bar the infringement complained of is of a patent for a device which constitutes only a feature of the machine or structure sold by the defendant. The patent is for a tabulating attachment so constructed that it may be attached to or removed from a typewriting machine without interfering with its use as an effective typewriter. The patentee in his specification stated that his object was to provide means for automatically locating with the typewriter one or more columns of words or figures and of mechanically skipping any intervening space desired to be left blank. Prior to his invention, when the operator desired to do tabulating work, it was necessary to advance the carriage by repeatedly striking a spacing key or by unlatching the carriage and sliding it to the desired point by means of a hand lever. Both of those methods were tedious, irritating, and perplexing, and the patentee sought to obviate them by his device. It certainly cannot be claimed that the entire value of the Stearns machines was due to the infringing tabulator. No claim of that kind was advanced before the master, and no attempt was made to establish the fact by any evidence that was adduced. What-

ever evidence there is in the record tends to prove that the contrary was the fact.

The tabulator had no effect on the ordinary use of the machine. It could be taken away from the machine without in the least affecting its utility for all the ordinary daily uses. It was claimed that most operators never used the tabulator at all, and that in doing ordinary column work many operators did not use the tabulator, even when it was on the machine. The defendant's catalogues and folders, which are in evidence, show that the tabulator is only one of a number of the claimed advantages of the Stearns machine. Some of the advantages thus claimed are merely additions to the machine for special purposes, like the tabulator, while others go to modifications in the general structure of the machine, or in parts necessary for its operation. The manager of the Oliver Typewriter Company testified that they did not attach tabulators to their machines unless they were specially desired; that the sale of their typewriters had gone to the hundred thousands, but that the sales of the tabulators had amounted to nothing. The manager of the Royal Typewriter Company testified to a similar experience, and that their machines were sold at the same price with or without a tabulator, and that "it is only an occasional happening" when a purchaser wanted a tabulator attached to the machine. The rule applied in the Air Brake Case is the rule the Supreme Court previously laid down in Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371 (1884). In that case Mr. Justice Field, speaking for the court, said:

"The patent was for an improvement in the construction of mop heads, which may be described, with sufficient accuracy, as an improvement in the method of moving and securing in place the movable jaw or clamp of a mop head. With the exception of this mode of clamping, mop heads like the plaintiff's had been in use time out of mind. Before the master, the plaintiff proved the cost of his mop heads, and the price at which they were sold, and claimed the right to recover the difference as his damages. This rule was rejected; and, no other evidence of damages being offered, the master reported as stated. When a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance. He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated. The rule on this head is aptly stated by Mr. Justice Blatchford in the court below: 'The patentee,' he says, 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative, or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.' The plaintiff complied with neither part of this rule. He produced no evidence to apportion the profits or damages between the improvement constituting the patented feature and the other features of the mop. His evidence went only to show the cost of the whole mop and the price at which it was sold."

The doctrine of Garretson v. Clark, was reasserted in Westinghouse Electric & Manufacturing Co. v. Wagner Electric & Manufacturing Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222 (1912), and again

in Dowagiac Manufacturing Co. v. Minnesota Moline Plow Co., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398 (1915). In the latter case it was explained that in an apportionment of the profits mathematical exactness is not indispensable, and that reasonable approximation is what is required, which usually may be attained through the testimony of experts and persons informed by observation and experience.

In Yesbera v. Hardesty Manufacturing Co., 166 Fed. 120, 92 C. C. A. 46 (1908) the case being before the Circuit Court of Appeals in the Sixth Circuit, Judge Severens, in referring to the Garretson Case, says: "The unanimity with which infringers seek the shelter of that case is something remarkable." But in his opinion Judge Severens points out that the Garretson Case related to a patent for an improvement, and not to one for an entirely new machine or contrivance, and stated that in his opinion the rule was not to be applied to the infringement of patents of all descriptions but only to patents for an improvement. But the patent involved in the case at bar is a patent for an improvement, and the rule of that case is applicable to the case at bar, unless there are other circumstances which distinguish it.

The court below, in its memorandum opinion awarding to the plaintiff the whole profit made by the Typewriter Inspection Company, instead of the nominal recovery allowed by the master, did so with the simple remark that "it seems under some of the authorities entitled" to such a judgment. No authorities were cited, and this brings us to inquire under what circumstances a patentee is entitled to claim all the profits made by the infringer. That question was before the Supreme Court in Westinghouse Electric & Manufacturing Co. v. Wagner Electric & Manufacturing Co., supra. The principles laid down in that case are that the patentee is entitled to all the profits: (1) Where a patent, though using old elements, gives the entire value to the combination. (2) Where profits are made by using an article patented as an entirety, unless the infringer can show, and the burden is on him, that the profits are partly the result of some other things used by him. (3) Where the patent admittedly creates only a part of the profits, so that the patentee would be entitled only to that part, if he could apportion the profits and show by reliable and satisfactory evidence either what part of the profits are attributable to his patent, and the infringer, by commingling the elements, renders it impossible for the patentee to meet the requirements of apportionment. In such a case, as in that of a trustee ex maleficio confusing gains, the loss should fall on the guilty and not on the innocent. In the above case the defendant claimed that the infringing transformers contained elements of the patent which were not embraced in the claim alleged to be infringed, and that no profit due to those elements could be recovered, unless the plaintiff apportioned the gains due solely to the claim infringed.

It is not seriously claimed that the Stearns machine infringes the Underwood machine as an entirety. There is no single patent covering the whole of either the Stearns or the Underwood typewriting ma-

chines. There are some 8 separate patents on the Stearns machine and 43 on the Underwood. But each of these machines has a tabulator attachment, and to that the infringement is confined. The Stearns Company used the tabulator patented by Schneelock, while the Underwood Company used the tabulator or "column stop" of the Gathright patent. As the infringement does not extend to the entire machine, it does not seem equitable that the infringer should relinquish all the profits made on the sale of his machines, especially when, as in this case, he has not been a willful infringer. The ends of justice are served if he is obliged to turn over to the patentee of the infringed tabulator the portion of the profits due to the use of the infringed device if that can be ascertained. In this case that would not be the profit derived from the tabulator as a whole, but only that portion of the profit attributable to that part of the tabulator which infringed the plaintiff's tabulator device. And the burden rested on the plaintiff to show that a profit was derived from the use of the tabulators as a whole, and also to apportion, if possible, the profit derived from the use of the infringing as distinguished from the noninfringing elements of the tabulators. If that had been made impossible by the act of the infringer, then the infringed could properly claim the whole profit, realized from the use of the tabulators. But to establish the principle that one who has acted in good faith and has derived a structure which is an advance over the prior art, but who has in a minor particular technically infringed, must give up not only the profits due to the use of the device, but the entire profits realized from the sale of any machine which makes use of it, although it may be a very insignificant part of the machine, does not accord with one's ideas of justice and of equity.

The burden was on the plaintiff to show that the infringing defendants made profits, and to show what portion of those profits was due to the use of the tabulators; if possible, what portion of the profits realized from the use of the tabulators was due to the use of his patent as distinguished from the other features of the tabulator. If that could not be shown, because of the act of the infringer in mingling the elements of plaintiff's tabulator with those of his own, then the plaintiff was entitled to claim the whole profit realized from the use of the tabulator. As a matter of fact, it is doubtful upon the evidence in this case if the tabulators really added greatly to the marketable value of the machines. But, whether they did or did not, it is clear that whatever value they may have added was not due solely to the feature of the Gathright tabulator which the Schneelock tabulator infringed. Schneelock improved upon the Gathright structure and developed the decimal tabulator, avoiding the inconvenience of the extra adjustment necessary in the use of the Gathright device, so that by a single movement the machine arrived at the desired column. This he accomplished by the depression of the tabulator key alone, without further manipulating of the carriage. This result was obtained by providing a number of slots at the front of the machine corresponding one to each column up to one million, and by a mechanism whereby the stop is adjusted latterly to correspond, so that by

moving the single key latterly into the desired position and then depressing it into the correct slot the carriage by that movement alone is released and stopped at the exact point or space required.

Whether the infringer did so commingle the elements as to relieve the complainant from the duty of apportionment it is not necessary to inquire. The court below evidently thought that the circumstances did relieve the complainant from that duty, and so awarded to it the entire profits made by the Typewriter Inspection Company, and that company is not objecting in this court to that part of the decree, but asks that it be affirmed.

[2] We come, now, to the matter of damages. No damages were allowed either by the master or the court below. The plaintiff in its exceptions to the master's report insists that he erred in failing to find $65,560 damages suffered by plaintiff from the sale of the infringing machines made by the Stearns Company, and in the assignment of errors the court is said to have erred in failing to find substantial damages by reason of the manufacture and sale of the infringing machines. Act July 8, 1870, first authorized courts of equity to allow damages in addition to profits. And the Revised Statutes in section 4921 (Comp. St. 1913, § 9467) provide that:

"Upon a decree being rendered in any such case for an infringement, the complainant shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby; and the court shall assess the same or cause the same to be assessed under its direction. And the court shall have the same power to increase such damages, in its discretion, as is given to increase the damages found by verdicts in actions in the nature of actions of trespass upon the case."

On an acounting for infringement of a patent, defendant's profits and complainant's damages are distinct from and independent of each other. They are governed by different principles, and the allowance of one does not preclude recovery of the other. Beach v. Hatch (C. C.) 153 Fed. 763. And it does not follow that no damages are recoverable because no profits were realized. Indeed, the fact that no profits were made may make it less difficult to assess the damages, as the law does not permit a duplication in damages of what has been received in the shape of profits. Yesbera v. Hardesty Manufacturing Co., supra. But the difficulty in the case at bar is that complainant has offered no proof that can seriously be considered as entitling it to any recovery for damages. Damages cannot be awarded unless there is a ground on which a recovery of damages can be based. And this record discloses no such ground. The Stearns Company was never a competitor with the plaintiff in anything more than name. The plaintiff was making some 50,000 machines a year and the Stearns Company less than 900. It has not been shown that the infringement by either defendant caused the slightest injury to plaintiff's business. No proof has been introduced that the plaintiff's sales were diminished by any cause during the infringing period. If there had been proof of lost sales, then proof would have been necessary as to the actual money loss caused by the lost sales, and there is no proper or sufficient proof of the cost of manufacturing of complainant's machines, or of the net amount for which they were sold, and from which plain-

tiff's profit could be calculated. Moreover, the plaintiff made no attempt to prove an established royalty as a basis of damages. Its claim is based on the assumption that, if purchasers of the Stearns machines had not purchased the Stearns machines, they would have purchased an Underwood. But the court cannot assume any such thing. If the Stearns Company had been the only competitor the plaintiff had, there might be more reason for the argument. But in view of the fact that during the period of these sales there were at least eight other manufacturers having machines on the market and with a production in excess of the Stearns Company, it will be seen how impossible it is for a court to indulge in any such illogical conclusion.

[3, 4] It was urged in the argument in this court that the defendants are jointly and severally liable, inasmuch as the Stearns Company manufactured the machines and the Typewriter Inspection Company sold them. The objection thus raised in this court was not suggested to the master, and is not included among the exceptions taken to his report, although it is stated in the assignment of errors filed to the court's decree that error was committed by the court in failing to find that the defendants were jointly infringers and are jointly liable. Counsel must be aware that the proper practice requires that no exceptions to a master's report can be raised in this court which were not taken before the master. The rule is an old and well-established one. In Story v. Livingston, 13 Pet. 359, 366, 10 L. Ed. 200, the Supreme Court in 1839 declared that in chancery practice no exceptions to a master's report could be made which were not taken before the master, and that the object of the rule was to save time, and to give him an opportunity to correct his errors or reconsider his opinion. Such had long been the English rule, and the federal courts have always adhered to it. See McMicken v. Perin, 18 How. 507, 15 L. Ed. 504 (1855); Topliff v. Topliff, 145 U. S. 156, 173, 12 Sup. Ct. 825, 36 L. Ed. 658 (1892).

But we may perhaps waive the technicality in this case for the purpose of saying that the objection, if properly raised, would be without merit. This action is distinguishable from Jennings v. Dolan (C. C.) 29 Fed. 861 (1887). In that case, one defendant manufactured the infringing article, and the other defendant, acting as the other's agent, sold it, and the court held them jointly liable. In the case at bar no agency existed between these defendants, and Stearns Company had no interest in any sales made by the Typewriter Inspection Company. The latter bought the machines on its own account, and sold them at its own prices, and strictly on its own account.

The decree is affirmed in all respects, except that the court below is directed to modify the amount of the judgment to be entered against the Typewriter Inspection Company, so that it shall be for the sum of $1,428, instead of $1,328.