## BUSH & LANE PIANO CO. v. BECKER BROS.

(Circuit Court of Appeals, Second Circuit.   May 9, 1916.)

### No. 265.

1. PATENTS ☞318(6)—SUIT FOR INFRINGEMENT—ACCOUNTING FOR PROFITS—COST OF PRODUCTION.

A corporation infringer cannot reduce the amount for which it is liable as profits of the infringement by voting the greater part of its gross profits as salaries to its officers, who with the president's wife were the only stockholders; but in such case the court will determine upon evidence the usual cost of superintending and managing the business, and only such amount will be allowed.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 576; Dec. Dig. ☞318(6).]

2. PATENTS ☞318(3)—INFRINGEMENT OF DESIGN PATENT—PROFITS RECOVERABLE.

On an accounting for profits made by an infringer of a patent for a design of a piano case, the evidence showed the profits made from the sale of pianos having cases of the patented design, and also the cost of such cases and of the completed instruments; but there was no instance in which either the case or the mechanism was sold separately, and no evidence from which it could be determined to what extent the use of the patented design contributed to the sales. *Held* that, under Act Feb. 4, 1887, c. 105, § 1, 24 Stat. 387 (Comp. St. 1913, § 9476), complainant was entitled to recover all of the profit made on the cases as the "article to which the design had been applied," and that on the evidence the court properly awarded that proportion of the total profits which the cost of the case bore to the cost of the completed piano.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 570, 571, 575; Dec. Dig. ☞318(3).]

Ward, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Bush & Lane Piano Company against Becker Bros., a corporation. From a decree awarding damages for infringement of a patent, both parties appeal. Affirmed.

For prior opinion, see 222 Fed. 902, 138 C. C. A. 382.

Cross-appeals from a decree awarding to plaintiff damages for infringement of its design patent, No. 37,501. The patent in suit covers a "design for a piano case." Defendant made and sold 958 pianos for $158,302.95. The factory cost to defendant of that number of pianos was (by its own books) $113,044, and the expense of marketing, with allowance for overhead charges, brought up production cost to $122,441.98, leaving a profit of $35,860.95, on the pianos containing the infringing design.

It was proven that the piano cases (as distinct from the piano mechanism) were assembled and finished by defendant from partly prepared material procured from other manufacturers, that the construction of the finished piano was such that the case and works were merely component parts of an integral whole, and that there was no instance of a sale of a piano without a case, or a case without works. The names indicate no more than two portions of a product commercially unitary.

This cause was before this court in 222 Fed. 902, 138 C. C. A. 382, and was remanded for further proceedings before the master. By his report the court below was informed of the cost of the piano case and of the completed instrument, as well as the profits above set forth. Thereupon decree was en-

tered for that proportion of the profits which the cost of the case bore to the cost of the completed piano. The appeal of defendant assails the method of fixing profits. Both parties complain of the amount awarded; plaintiff demanding all the profits derived from all pianos containing the patented design, and defendant contending that no more than $250 can be granted. The other matters raised by assignments of error require neither mention nor comment.

John J. O'Connell, of New York City, for plaintiff.
John McCormick, of New York City, for defendant.

Before WARD and ROGERS, Circuit Judges, and HOUGH, District Judge.

HOUGH, District Judge (after stating the facts as above). [1] The piano business of Becker Bros. is an incorporation of the trade created by Jacob H. Becker, its president. The stockholders have always been Becker himself, his wife, and his attorney. The corporate books of account show that Becker drew on the pay roll only $15 weekly, in what capacity does not appear. At the year's end, the excess of receipts over expenses was for a time transferred to the "Capital Account of Jacob H. Becker." This practice continued until after this suit was threatened, if not begun, when the end of the year was marked by charging up salaries to president and secretary (the attorney), which for the year 1912 produced an apparent loss of over $20,-000. The justification for this procedure is a directors' vote that J. H. Becker should receive for his services 85 per cent. of gross profits, and the secretary 5 per cent. Whether this vote was taken and entered on the very informal minute book of this corporation before or after suit brought is a matter of contest, into which we need not enter, because it makes no difference when 90 per cent. of gross profits was voted to the president and secretary for services. Such disposition was but one method of distributing earnings to stockholders in a "close corporation" (as Becker called it) which has never paid a dividend. The formality was unnecessary, for if the owners of the concern drew 90 per cent. of profits, it made no difference to them by what name their gains were called.

Defendant's contention that it is only answerable for such profits as remain after paying out nearly all the difference between expenses and receipts in salaries credited at year's end is absurd. The District Court rightly took evidence as to the usual cost of superintending and managing a business of the kind and extent shown by Becker himself, added that to factory cost of product, and, having thus fixed manufacturing and selling expense, credited the same against receipts acknowledged by Becker. The difference is the profit of the business.

[2] The question as to how to ascertain a patentee's share in the gains of an infringer, when the infringement constituted but a part, possibly a small part, of the business from which profits flowed, has several times received our attention on occasions other than the first appeal in this cause. Tuttle v. Claflin, 76 Fed. 227, 22 C. C. A. 138; Wales v. Waterbury Mfg. Co., 101 Fed. 126, 41 C. C. A. 250; Westinghouse v. New York Air Brake Co., 140 Fed. 545, 72 C. C. A. 61; Force v. Sawyer-Boss Mfg. Co., 143 Fed. 894, 75 C. C. A. 102; Un-

derwood, etc., Co. v. Stearns & Co., 227 Fed. 74, 141 C. C. A. 622. Whether the decree below is consonant with these rulings as modified or enlarged by Westinghouse v. Wagner, etc., Co., 225 U. S. 617, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, Dowagiac, etc., Co. v. Smith, 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398, and Hamilton-Brown, etc., Co. v. Wolf Bros. Co., 240 U. S. 251, 36 Sup. Ct. 269, 60 L. Ed. 629, is one way of putting the chief problem here presented.

There is said to be a radical difference between the principles governing recovery on design, as compared with other, patents. This is thought to arise from the act of February 4, 1887. That act (after granting $250 for any infringement of design) provides that in case the total profit made by an infringer from the manufacture or sale of the article or articles to which the design has been applied exceeds $250, the infringer shall be further liable for the excess of such profit over and above $250. Plaintiff asserts that, having shown infringement by something sold with and as part of a piano, the "article to which the design" was applied must be the whole piano. Defendant insists that under the statute all recoveries for design infringement are penalties, and therefore strictissimi juris; consequently, plaintiff not having shown any separate or special profit derived from the case, recovery can be $250 only, because it was to the case, and not to the piano as a whole, that the design was applied.

As pointed out on the previous appeal, the act of 1887 was intended to mitigate the harsh rule of the Dobson Cases, 118 U. S. 10, 6 Sup. Ct. 946, 30 L. Ed. 63. It is true that in Dunlap v. Schofield, 152 U. S. 244, 14 Sup. Ct. 576, 38 L. Ed. 426, the minimum recovery of $250 was said to be "in the nature of a penalty," and it has usually been referred to as a penalty since that time. Lichtenstein v. Phipps, 168 Fed. 62, 93 C. C. A. 483; Frank v. Geiger (C. C.) 121 Fed. 126. But when a design patentee seeks to recover more than $250, because either he lost a greater sum by the infringement, or the infringer made a greater profit thereby, no reason is seen for departing from the construction of the statute announced by us in Untermeyer v. Freund, 58 Fed. 212, 7 C. C. A. 190:

"The manifest purpose of Congress was to enlarge the remedy against infringers of design patents, and to declare that the measure of profits recoverable on account of the infringement should be the total net profits upon the 'whole article.'"

But there is no statutory definition of the phrase "whole article." Each litigation presents its own problem; it is impossible to define in advance. Probably each solution depends on the relation to the business whole of the part embodying the patent, and that relation must be considered from all viewpoints, technical, mechanical, popular, and commercial. Thus a patented design for a "portable house" would seem to apply to the whole structure; otherwise, if for an "entrance door." A patent for a "book binding" cannot, either justly or logically, be so identified with the entire book as to give all the profits on a work of literary genius to the patentee of a binding, although the binding was manufactured with and for that one book, and has no

234 F.—6

separate commercial existence. The binding and the printed record of thought respond to different concepts; they are different articles.

Accordingly we held on the former appeal herein that the article to which the patented design had been applied was the piano case, and all the evidence taken since mandate confirms that view.

Impediments to recovery of both damages and profits have arisen, not so much from difficulty in ascertaining in what the infringing thing or article consisted, as in assigning to that infringement any particular or specified portion of the gains made or prevented by a defendant's wrongdoing. The main source of such difficulties has been the narrow field of evidence, suggested by counsel or approved by the courts, in endeavors to precisely assign profits or damages to their source; after the act of infringement, the thing or article containing the infringement and the existence of profits or losses have been amply demonstrated. Great hardship has been wrought by the rule of impossibility enunciated in Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, concerning the popularity of which case with infringers we entirely agree with the remarks of the court in Yesbera v. Hardesty, 166 Fed. 120, 92 C. C. A. 46. The other extreme is to treat an infringer as a trustee ex maleficio in the manner approved in Westinghouse, etc., Co. v. Wagner Co., supra.

It is not often that giving all the profits to the patentee can be justified, as in Wales v. Waterbury Co., supra, on the ground that there would have been no profits, had it not been for the appropriation of the patented idea. The enormous increase in improvement patents and minor inventions has of late greatly accentuated these long-recognized obstacles.

Dowagiac v. Smith, supra, related to an assessment of damages and a mechanical patent; but the court pointed out that the introduction of evidence as to what would have been a reasonable royalty should be regarded as a proper method of ascertaining damages, having regard to the nature of the invention, its utility, advantages, and extent of use involved. Such evidence was declared to be "quite as admissible as that of an established royalty." There is no reason why this view of proper evidence should not be applied to the estimation of profits, as well as the ascertainment of damages.

There is here ample proof that profit was derived from the use of plaintiff's design, which was chosen because it gave to the piano something which the trade demanded, namely, a "massive appearance." It also appears from the whole testimony (which largely consists of Becker's admissions and opinions) that there was just as large profit (proportionally) on the ornamented and infringing casing, which attracted the customer's eye, as upon the piano mechanism, which pleased the ear. The cost of each separate element of the finished product is known, and there is no difference perceivable between admitting expert opinions as to a proper royalty and similar opinions as to the origin and expense of the constituent parts of a piano. Indeed, as between expert opinions upon royalties and the statements of expert manufacturers and accountants, we consider the latter rather more reliable and persuasive.

Since, therefore, the plaintiff has shown a real profit attributable in some degree to the infringed design, the ends of justice are best served by apportioning, and thus separating, profits which were derived from the investment in infringment. Exactly this method was approved in Herman v. Youngstown Car Mfg. Co., 216 Fed. 607, 608, 132 C. C. A. 612; and of it the appellate court for the Sixth circuit remarked that:

"Semi-independent parts [of the whole device] may each involve substantially the same cost of material and labor and may each contribute equally to the final marketability. In that event, an equal division of the profits among these parts is both arbitrary and reasonable; arbitrary because of its form, but reasonable because obviously fair and just."

The Circuit Court of Appeals for the Sixth Circuit in Underwood, etc., Co. v. Fox, etc., Co., 220 Fed. 887, 136 C. C. A. 446, has referred to this decision with approval. We think there could be no better set of facts for the application of this method of separating or segregating profits than is presented by this case.

Some phrases in the opinion of this court upon the former appeal herein assumed for purposes of argument that the piano case could be shown to be a separate thing with possibly a separate market from the action or mechanism. This appears unsupported by the evidence; but it makes no difference in the rule of law, when once the article to which the design was applied has been ascertained.

It is not held that such evidence as was here received is always the best, nor that the method pursued is preferable to all others, nor that, where other and better means of measuring liability exist, they can be neglected. But it is held that this method of allotting profits in correspondence to cost of production between the whole and its parts is permissible.

As both parties have appealed, the decree below will be affirmed, without interest, and without costs in this court.

WARD, Circuit Judge (dissenting). The bill in this case was filed expressly upon the act of February 4, 1887. That act does not apply to all infringements of design patents, but only to such infringements as are willful and deliberate. Such infringements are punished by giving the patentee $250, even if no profits have been made by the defendant on the article manufactured or sold to which the patented design was applied, together with all profits, if any have been made, on the article in excess of that sum. These provisions are penalties, and have been so regarded in Dunlap v. Schofield, 152 U. S. 244, 14 Sup. Ct. 576, 38 L. Ed. 426; Monroe v. Anderson, 58 Fed. 398, 7 C. C. A. 272; Lowell v. Hogg (C. C.) 70 Fed. 787; Fuller v. Field, 82 Fed. 813, 27 C. C. A. 165; Gimbel v. Hogg, 97 Fed. 791, 38 C. C. A. 419.

The first section of the act is as follows:

"Sec. 1. *Unauthorized Use of Patented Design—Penalty and Liability—Suits.* That hereafter, during the term of letters patent for a design, it shall be unlawful for any person other than the owner of said letters patent, without the license of such owner, to apply the design secured by such letters patent, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or to sell or expose for sale any article of manufacture to which

such design or colorable imitation shall, without the license of the owner, have been applied, knowing that the same has been so applied. Any person violating the provisions or either of them, of this section, shall be liable in the amount of two, hundred and fifty dollars; and in case the total profit made by him from the manufacture or sale, as aforesaid, of the article or articles to which the design, or colorable imitation thereof, has been applied, exceeds the sum of two hundred and fifty dollars, he shall be further liable for the excess of such profit over and above the sum of two hundred and fifty dollars. And the full amount of such liability may be recovered by the owner of the letters patent, to his own use, in any Circuit Court of the United States having jurisdiction of the parties, either by action at law or upon a bill in equity for an injunction to restrain such infringement."

The second section provides that nothing in the act contained shall limit any remedy at law or in equity that the owner of a design patent might have, had it not been passed, except that he shall not twice recover the defendant's profits. Accordingly a patentee whose design patent has been willfully infringed may either pursue remedies existing before and outside of the act of 1887 or he may sue under that act. If he takes the latter course, he is bound by the act. Its purpose was to relieve a design patentee, in the case of a deliberate and knowing infringement, from any obligation to prove what part of the wrongdoer's profits were due to the infringement. If there were no profits on the article manufactured and sold, or if they were less than. $250, the patentee could recover that sum. If they were more than that sum, then all in excess of it. This court, speaking through Judge Shipman, in Untermeyer v. Freund, 58 Fed. at page 211, 7 C. C. A. at page 189, said of the case of Carpet Co. v. Dobson (C. C.) 10 Fed. 385:

"Upon appeal, the Supreme Court disagreed with the conclusion of the Circuit Court, and held that the complainant must be required to establish the actual damages or profits by trustworthy legal proof; and, as there was no evidence in the case of the value which the patented designs had contributed to the infringing carpets, the decree must be reversed, and nominal damages only should be awarded. Dobson v. Carpet Co., 114 U. S. 439 [5 Sup. Ct. 945, 29 L. Ed. 177]. The statute of 1887 was passed in consequence of this decision. The manifest purpose of Congress was to enlarge the remedy against infringers of design patents, and to declare that the measure of profits recoverable on account of the infringement should be considered to be the total net profits upon the whole article. A construction which should limit a, recovery above $250 to the amount which the complainant could clearly establish to be the value which the design had contributed to the infringing carpets would be at variance, not only with the apparent legislative intent, but with the language of the statute. The rule which Congress declared for the computation of profits was the total profit from the manufacture or sale of the article to which the design was applied, as distinguished from the pre-existing rule of the profit which could be proved to be attributable to the design."

A great deal that is said in the opinion of the court would be perfectly applicable if the suit in this case were not under the act of 1887, which made an entirely new rule to cover cases of willful infringement of design patents. No light is afforded by decisions in cases of infringements of other patents, especially upon the question of damages as distinguished from profits.

If the article sold to which the patented design was applied in this

case had been the piano, then the complainant patentee would have been entitled to all the defendant's profits on the piano over $250, as Judge Hazel originally held. As, however, this court on appeal has held that the article sold was not the piano, but the piano case, the question is: What profits did the defendant make on the sale of the case? It is conceded, and indeed is obvious, that it is impossible to prove any such profit separately. The design contributes only to the selling of the piano; it does not affect either its tone, its durability, its economy, or its use. Therefore I think all the complainant can recover in this case is $250. The method adopted by the court below on the accounting and approved by this court is purely arbitrary. To say that the design contributes to the profits in the proportion that the cost of manufacturing the case bears to the cost of manufacturing the whole piano is a pure guess. It seems to me that the logical result of the opinion of the court should be that the complainant recover all the defendant's profits on the piano. We should not be dismayed by the consequences of a statute whose construction is plain.